IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REESE & HOWELL, INC., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.** |
| | ) **2:06-cv-W998-WKW** |
| LEON CARMICHAEL, SR.; UNITED | ) |
| STATES OF AMERICA, | ) |
| | ) |
| **Defendants.** | ) |

2007 APR 19 ₽ 4 15

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## REESE & HOWELL, INC.'S MEMORANDUM OF FACTS AND LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Reese & Howell, Inc. ("R&H") submits this memorandum in support of its motion for partial summary judgment filed contemporaneously herewith.

### I.    STATEMENT OF UNDISPUTED MATERIAL FACTS

R&H was selected by Defendant Leon Carmichael, Sr. ("Carmichael") to perform work and labor on the property commonly known as the Carmichael Center, located at 150 E. Fleming Road, Montgomery, Alabama ("Carmichael Center"). (*See* Affidavit of Pickett Reese, attached as Exhibit A.)   On November 22, 2002, R&H and Carmichael entered into a contract ("Contract") defining their respective duties in regards to the materials and labor supplied for the excavation, grading, stripping, curb and gutter, sidewalk, paving, and other site preparation work on the Carmichael Center.  (Ex. A.)

In relevant part, the Contract states as follows:

1.    **Scope of Work**: The contractor will furnish all material associated with Attachment "A". The material will be placed in mutual agreement between the contractor and the owner, for the expansion of owners parking area.

\* \* \* \*

3. **Contact [sic] Price**: The Owner agrees to pay the Contractor those prices as shown on Attachment "A".

    (a)    Each month, the contractor will prepare an estimate for the portion of work performed thereof up to the first day of that month. This amount will then be due to the contractor, by the 15th day of that month less the aggregate of previous payments; and

    (b)    Payments due to Contractor which are not paid in accordance herewith shall bear interest at the rate of 1 ½ percent per month (18% annually). In the event it should become necessary to employ counsel to collect this obligation, Owner agrees to pay court cost and reasonable attorney's fee for the services of such attorney, whether suit is brought or not.

The Contractor and Owner, for themselves, their heirs, successors, executors, administrators, and assigns, hereby agree to the full performance of the covenants herein contained.

(*See* Contract, attached as Exhibit 1 to Ex. A.)

R&H performed all of the work and supplied all of the materials required under the Contract. (Ex. A.) It is undisputed that Carmichael received the benefit of the work performed and materials supplied by R&H on the Carmichael Center project.

During the course of the Carmichael project, and pursuant to the Contract, Carmichael was billed for unpaid materials provided and services rendered by R&H. (Ex. A.) Carmichael has not paid R&H for the materials and labor billed to Carmichael in Estimates 8 and 9. (*Id.*) Copies of Estimates 8 and 9 are attached as Exhibit 2 to Ex. A and are incorporated by reference as if set out here in full. The amount owed to R&H for unpaid labor and materials is $182,367.28. (Ex. A.) To date, interest has accrued, as provided by the terms of the Contract, on the unpaid labor and materials owed to R&H in the amount of $115,110.40, and continues to accrue at a rate of $89.93 per diem. (*Id.*)

R&H filed a materialman's lien against the property owned by Carmichael in the amount of $182,367.28, plus interest. That lien was duly executed and recorded in the Office of the

179180.1

2

Judge of Probate of Montgomery County, Alabama, on November 19, 2003. A verified

statement of the lien is recorded in Real Property Book 2780 Page 14. A true and correct copy of

the verified statement of R&H's lien is attached as Exhibit 3 to Ex. A.

R&H filed an action in the Circuit Court of Montgomery County, Alabama, *Reese &*

*Howell, Inc. v. Leon Carmichael, Sr.*, CV-03-2988 (the "State Court Action"). As discussed

herein below, R&H's lien transferred, pursuant to 21 U.S.C. § 853, to the sales proceeds from the

forfeiture sale of the Carmichael Center, as held by the U.S. Marshal's Service. (*See* Order of

Circuit Court of Montgomery County, Alabama dated June 28, 2006, attached as Exhibit "B.")

## II.    PROCEDURAL HISTORY

The Carmichael Center was the subject of a forfeiture Order following the conviction of

Leon Carmichael, Sr. by this Court in case no. 2:03cr259-MHT. (*See* Second Preliminary Order

of Forfeiture dated August 15, 2005, attached as Ex. "C."). R&H petitioned this Court, pursuant

to 21 U.S.C. § 853, to validate R&H's third-party interest in the Carmichael Center as created

by R&H's materialman's lien. (*See* Petitioner's Claim of Interest in Property Subject to Second

Preliminary Order of Forfeiture, attached as Ex. "D."). The United States of America ("United

States") opposed R&H's motion, arguing, among other things that R&H's lien could not be

enforced because the United States had not been made a party to the State Court Action. (*See*

Response to Show Cause Order Regarding Reese & Howell, Inc.'s Petition to Validate Third

Party Interest, attached as Ex. "E."). R&H's petition was initially denied by Opinion and

separate Judgment on March 14, 2006. (*See* Judgment and Opinion, attached as Ex. "F.").

Subsequently, R&H filed a Motion to Alter, Amend, or Vacate the March 14, 2006 Judgment.

(*See* Petitioner Reese & Howell, Inc.'s Motion to Alter, Amend or Vacate Judgment and

Memorandum Brief in Support, attached as Ex "G.").

179180.1

3

On June 7, 2006, this Court issued an Order and Opinion amending the March 14 Judgment and validating R&H's interest in the Carmichael Center. The June 7 Order allows R&H to receive a portion of the sale proceeds in satisfaction of its materialman's lien upon the final adjudication of the State Court Action. (*See* Order, attached hereto as Exhibit "H."). The June 7 Opinion left open the question as to whether the United States must be made a party to the State Court Action. (*See* Opinion, attached hereto as Exhibit "I."). Because the State Court Action had not been fully adjudicated, the United States Marshall's Service was ordered to hold in escrow sufficient funds to satisfy R&H's materialman's lien pending the resolution of the State Court Action.

This Court's June 7 Order also required R&H to enter into an agreement with the United States which would allow title to the Carmichael Center to be transferred to the purchaser free and clear of R&H's materialman's lien. (Ex. H.). R&H agreed with the United States to transfer its lien from the Carmichael Center to a separate security as contemplated by *Ala. Code* § 35-11-233, which allows the transfer of a duly filed materialman's lien to a "sum of money." However, § 35-11-233 specifically contemplates that the money to which the lien is transferred shall be "deposit[ed] with the Court in which the action is brought...." Accordingly, R&H and Carmichael specifically agreed to waive the enforcement of any provision of § 35-11-233 which would require the "sum of money" securing R&H's materialman's lien interest to be deposited in the State Court. R&H and Carmichael also specifically agreed to waive the right to enforce any provision of Alabama law which requires the State Court to obtain jurisdiction over the "sum of money" securing R&H's materialman's lien interest and to allow this Court to retain specific jurisdiction over the funds securing R&H's lien interest. R&H also agreed to execute those

documents necessary to transfer its lien interest to the proceeds from the sale of Carmichael Center at or immediately following the closing of the pending sale.

On June 28, 2006, the State Court entered an Order: (1) transferring R&H's materialman's lien to the proceeds realized from the sale of the Carmichael Center; (2) waiving any requirement created by *Ala. Code* § 35-11-233 that the sales proceeds from the Carmichael Center be deposited with the State Court; and (3) approving the agreement between R&H and Carmichael to waive the enforcement of any provision of Alabama law which would require the State Court to first obtain jurisdiction over the sales proceeds from the Carmichael Center in order to affect the contemplated transfer. Thereafter, the Carmichael Center was sold through a forfeiture sale and R&H's lien interest was transferred to the sales proceeds.

On September 27, 2006, R&H amended its Complaint in the State Court Action to include the United States as a party-defendant. (*See* Amended Complaint, attached as Ex. "J.") On or about November 9, 2006, the State Court Action was, pursuant to the request of the United States, removed to this Court. (Doc. No. 1). Accordingly, because the United States is now a party to this action, this matter is now "ripe" for submission to the Court on R&H's Motion for Summary Judgment on its lien against the sales proceeds.

### III.    STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of a claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a

179180.1

whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn there from in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. Although all reasonable inferences arising from the undisputed facts should be made in favor of the nonmoving party, an inference based on speculation and conjecture is not reasonable. *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985).

IV.    **ARGUMENT**

    A.    **JUDGMENT SHOULD BE ENTERED AGAINST CARMICHAEL AND THE UNITED STATES OF AMERICA AS A MATTER OF LAW ON R&H'S MATERIALMAN'S LIEN CLAIM**

A materialman's lien comes into existence immediately when one provides any materials or performs labor upon property, but it remains inchoate unless the statement of lien is time filed pursuant to *Ala. Code* § 35-11-213 (1975). *Hill v. Hill*, 757 So. 2d 468 (Ala. Civ. App. 2000) (*citing Metro Bank v. Henderson's Builders Supply Co.*, 613 So. 2d 339 (Ala. 1993)). Section 35-11-213 requires any person entitled to such a lien to file with the probate office "a statement in writing, verified by the oath of the person claiming the lien, or of some other person having knowledge of the facts, containing of the demand..., a description of the property..., and the name of the owner...." Where a plaintiff files a suit to perfect its lien, and the court finds that the plaintiff has a lien as claimed, the court "shall enter judgment for the amount secured thereby, interests and costs against the party liable for the same." *Ala. Code* § 35-11-224 (1975); *Copeland Constr. Co. v. All Phase-Electrical Wholesalers Inc.*, 378 So. 2d 230 (Ala. Civ. App. 1979). Further, *Ala. Code* § 25-11-233 allows the transfer of a duly filed materialman's lien to a "sum of money."

179180.1

In the present matter, R&H filed a materialman's lien against the property upon which

the work was performed. That lien was duly executed and recorded in the Office of the Judge of

Probate of Montgomery County, Alabama, on November 19, 2003. A verified statement of the

lien is recorded in Real Property Book 2780 Page 14. (*See* Exhibit 3 to Ex. B.) It is undisputed

that R&H performed work and supplied materials which enhanced the value of the land which is

the subject of the lien, that R&H was not paid for that work and/or material, and that R&H

complied with the requirements of § 35-11-213 in filing its materialman's lien against the

property. Further, it is undisputed that R&H's duly filed materialman's lien was transferred to

the proceeds of the sale of the Carmichael Center. Because the United States is now a named

party, the United States' prior objections to the enforcement of the lien have been cured and

there are no defenses to the enforcement of R&H's lien. Therefore, it is proper for this Court to

enter judgment on R&H's lien in the amount of the unpaid material and labor provided by R&H,

plus contract interest, and costs.

**B.    JUDGMENT ON R&H'S LIEN SHOULD INCLUDE THE CONTRACT
RATE OF INTEREST**

Although Alabama law does not specifically address the rate of interest to be used in

determining the amount of interest to be added to the judgment on R&H's lien, the law from

other jurisdictions would indicate that the interest rate as stated in the Contract between R&H

and Carmichael should be applicable. *See Benner-Williams, Inc. v. Romine*, 200 Kan. 483 (Kan.

1968) (upholding the finding of trial court that rate of interest stipulated in a note given to cover

costs of labor and materials used in improving real estate becomes part of contract and may be

recovered in a mechanic's lien foreclosure); *Marple v. Kerns*, No. 5814 slip op. (Vir. Cir. Ct.

February 28, 1984) (holding that "even though the mechanic's lien remedy is asserted for the

collection of the money, nevertheless the obligation arose out of the written contract and the rate

of payment, including the interest rate, would be that provided in the contract, certainly for the signatories to the contract"). As previously stated herein, the Contract between R&H and Carmichael clearly states that "[p]ayments due to [R&H] which are not paid in accordance herewith shall bear interest at the rate of 1 ½ percent per month (18% annually)...." (*See* Contract, attached as Exhibit 1 to Ex. A). Accordingly, the Court should apply the eighteen (18) percent rate of interest of 1 1/2 percent per month (18% per annum) as stated in the Contract between R&H and Carmichael to the unpaid labor owed to R&H and award R&H interest in the amount of $297,477.68 as of the date of this brief and an additional amount of $89.93 for every day between the date of this brief and the entry of judgment.

## V.    CONCLUSION

For the foregoing reasons, R&H's motion for summary judgment is due to be granted and judgment should be entered in favor of R&H in the amount of $297,477.68, plus per diem interest at the contract rate.

Respectfully submitted this 19th day of April, 2007.

_____
One of the Attorneys for Plaintiff
Reese & Howell, Inc.

OF COUNSEL:
W. Joseph McCorkle (MCC056)
Paul A. Clark (CLA076)
BALCH & BINGHAM LLP
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104-2549
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
jmccorkl@balch.com
pclark@balch.com

179180.1

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the parties listed below by placing a copy thereof in the United States Mail, postage prepaid and properly addressed to them on this the 19th day of April, 2007.

J. Knox Argo, Esq.
J. Knox Argo, P.C.
6706 Taylor Circle
Montgomery, AL 36117

*Attorney for Leon Carmichael, Sr.*

John T. Harmon
U.S. Attorney's Office
P.O. Box 197
Montgomery, Alabama 36101-0197

*Attorney for United States of America*

Of Counsel

179180.1

9

## AFFIDAVIT OF PICKETT REESE

STATE OF ALABAMA            )
COUNTY OF MONTGOMERY        )

Before me, the undersigned authority in and for said County and State, personally appeared Picket Reese, who by me being first duly sworn, did and does depose and say the following:

"I, Pickett Reese, the undersigned, am a resident of the State of Alabama and above the age of nineteen years. I am an officer of Reese & Howell, Inc. ("Reese & Howell"), and have personal knowledge of the facts set forth in this statement.

Reese & Howell was selected by Carmichael to perform work and labor on the property commonly known as the Carmichael Center which is located at 150 E. Fleming Road, Montgomery, Alabama. On November 22, 2002, Reese & Howell and Carmichael entered into a contract ("Contract") defining their respective duties in regards to the materials and labor supplied for the excavation, grading, stripping, curb and gutter, sidewalk, paving, and other site preparation work on the Carmichael Center. A true and correct copy of the contract between Reese & Howell and Carmichael is attached to this affidavit as Exhibit 1.

Reese & Howell performed all of the work required under the Contract. The property owned by Carmichael upon which Reese & Howell performed work under the Contract was substantially enhanced in value by virtue of the labor, materials, and supplies provided by Reese & Howell.

During the course of the Carmichael project, Carmichael was billed for unpaid materials provided and services rendered by Reese & Howell. Carmichael has not paid Reese & Howell for the unpaid materials and labor billed to Carmichael in Estimates 8 and 9. The total unpaid

**EXHIBIT A**

amount owed Reese & Howell is $182,367.28. True and correct copies of Estimates 8 and 9 are attached collectively as Exhibit 2 to this affidavit.

The Contract provides that interest will accrue on any unpaid amounts due at a rate of 1 ½ percent per month (18% annually). As of today's date, interest has accrued on the amount owed by Carmichael in the amount of $115,110.40, and continues to accrue at a rate of $89.93 per diem.

Reese & Howell filed a materialman's lien against the property owned by Carmichael in the amount of $182,367.28. That lien was duly executed and recorded in the Office of the Judge of Probate of Montgomery County, Alabama, on November 19, 2003. A verified statement of the lien is recorded in Real Property Book 2780 Page 14. A true and correct copy of the verified statement of Reese & Howell's lien is attached as Exhibit 3 to this affidavit.

FURTHER AFFIANT SAYETH NOT.

_____
PICKETT REESE

Sworn to and subscribed before me on this the 19th day of April, 2007.

[SEAL]

_____
Notary Public
My Commission Expires: _____
My Commission Expires 10-20-2010

166338.1                                   2



## REESE AND HOWELL, INC.

| | |
|---|---|
| THE STATE OF ALABAMA      ] | AGREEMENT BETWEEN |
| COUNTY OF <u>Montgomery</u>      ] | CONTRACTOR AND OWNER |

THIS AGREEMENT made and entered into on this <u>22nd</u> day of <u>November, 2002</u>, between <u>Leon Carmichael</u>, of <u>Montgomery, Alabama</u>, hereinafter called Owner, and <u>Reese & Howell, Inc.</u>, of <u>Pike Road, Alabama</u>, hereinafter called the Contractor;

### WITNESSETH:

1.  **Scope of Work:** The Contractor will furnish all material associated with Attachment "A". The material will be placed in mutual agreement between the contractor and the owner, for the expansion of owners parking area.

2.  **Insurance:** Workman's Compensation and other insurance as may be required by federal, state and local laws on street, sewer and water projects will be procured by the contractor and maintained by it for the duration of the contract. Liability insurance will be payable to the Owner and Contractor as their interest may appear.

3.  **Contact Price:** The Owner agrees to pay the Contractor those prices as shown on Attachment "A".

    (a) Each month, the contractor will prepare an estimate for the portion of work performed thereof up to the first day of that month. This amount will then be due to the contractor, by the 15th day of that month less the aggregate of previous payments; and

    (b) Payments due Contractor which are not paid in accordance herewith shall bear interest at the rate of 1 1/2 percent per month (18% annually). In the event it should become necessary to employ counsel to collect this obligation, Owner agrees to pay court cost and reasonable attorney's fee for the services of such attorney, whether suit is brought or not.

The Contractor and the Owner, for themselves, their heirs, successors, executors, administrators and assigns, hereby agree to the full performance of the covenants herein contained.

| | |
|---|---|
| <u>Leon Carmichael</u><br>Owner | <u>Reese & Howell, Inc.</u><br>Contractor |
| Date: *12-4-02* | Date: *13-4-02* |
| By: *(signature)* | By: *(signature)* |
| Its: *OWNER* | Its: *Pres.* |

**EXHIBIT 1**

Attachment "A" -Reese & Howell, Inc.

Project No.: Carmichael Center

| Description | Quantity | Unit | Unit Price | Extensio |
|---|---|---|---|---|
| Mobilization | 1 | L.S. | 6,000.00 | 6,000.0 |
| Stripping of Topsoil | 0 | C.Y. | 2.50 | 0.0 |
| Unclassified Excavation (Cut Around Building) | 1,958 | C.Y. | 2.50 | 4,895.0 |
| Borow Excavation | 7,469 | C.Y. | 5.50 | 41,079.5 |
| Subgrade Preparation | 21,129 | S.Y. | 1.00 | 21,129.0 |
| Clay Gravel Base (6"Thick) | 21,129 | S.Y. | 3.25 | 68,669.2 |
| 15" RCP (Class 3) | 112 | L.F. | 30.00 | 3,360.0 |
| Engineering Controls | 0 | Hr. | 100.00 | 0.0 |

|  |  | TOTAL | 145,132. |
|---|---|---|---|

Contractor's Initials:

Owner's Initials:

Attachment "A" -Reese & Howell, Inc.

Project No.: Carmichael Center

| Description | Quantity | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Mobilization | 1 | L.S. | 6,000.00 | 6,000.00 |
| Stripping Topsoil (6" Thick) | 6,389 | C.Y. | 2.50 | 15,972.50 |
| Stripping Wet Unclassified Excavation | 4,982 | C.Y. | 2.50 | 12,455.00 |
| 12" Undercut Front Parking Lot | 1,133 | C.Y. | 2.50 | 2,832.50 |
| 12" Replacement of Undercut | 1,359 | C.Y. | 5.50 | 7,474.50 |
| Unclassified Excavation   (4325) | 9,273 | C.Y. | 2.50 | 23,182.50 |
| Borrow Excavation (On Site Material) | 12,525 | C.Y. | 3.50 | 43,837.50 |
| Subgrade Preparation | 38,828 | S.Y. | 1.00 | 38,828.00 |
| Clay Base (6") | 38,238 | S.Y. | 3.25 | 124,273.50 |
| Topsoil Respread | 2,064 | C.Y. | 3.75 | 7,740.00 |
| 24" Curb & Gutter | 2,021 | L.F. | 10.00 | 20,210.00 |
| 6" Mountable Curb | 1,678 | L.F. | 5.50 | 9,229.00 |
| 24" Rollback Curb | 63 | L.F. | 11.00 | 693.00 |
| Handicap Ramps | 14 | EA. | 150.00 | 2,100.00 |
| 5' Wide Conc. Sidewalk | 253 | S.Y. | 20.00 | 5,060.00 |
| 6' Wide Conc. Sidewalk | 96 | S.Y. | 20.00 | 1,920.00 |
| 12' Wide Conc. Sidewalk | 198 | S.Y. | 20.00 | 3,960.00 |
| Concrete Paving | 1,698 | S.Y. | 26.40 | 44,827.20 |
| 1" 426A Plant Mix (Wear. Surface) | 35,631 | S.Y. | 1.79 | 63,779.49 |
| 2" 327A Plant Mix (Light Duty) | 29,822 | S.Y. | 3.15 | 93,939.30 |
| 3" 327A Plant Mix (Medium Duty) | 5,809 | S.Y. | 4.72 | 27,418.48 |
| Additional Mobilization (Pavement) | 1 | L.S. | 1,000.00 | 1,000.00 |
| 15" RCP Class 3 | 264 | L.F. | 25.00 | 6,600.00 |
| Slope Paved Headwall | 6 | EA. | 850.00 | 5,100.00 |
| Haybales | 20 | EA. | 7.00 | 140.00 |
| Construcion Layout | 1 | L.S. | 13,400.00 | 13,400.00 |
| Topography | 1 | L.S. | 3,600.00 | 3,600.00 |
| | | | TOTAL | 585,572.47 |

Contractor's Initials:_____

Owner's Initials:_____



FILE

**REESE AND HOWELL, INC.**

March 24, 2003
Carmichael Center, Montgomery Alabama
Additions to the original contract

Change Order #1
Addition to the south parking lot

| Item | Quantity | Unit | Unit Price | Total |
|------|----------|------|-----------|-------|
| Stripping Topsoil (6" thick) | 198 | Cy | 2.50 | $495.00 |
| Undercut Parking Lot | 667 | Cy | 2.50 | $1,667.50 |
| Replacement of Undercut | 800 | Cy | 5.50 | $4,400.00 |
| Borrow Excavation ( on site material ) | 11403 | Cy | 3.50 | $39,910.50 |
| Subgrade Preparation | 6157 | Sy | 1.00 | $6,157.00 |
| Clay Base (6") | 6157 | Sy | 3.25 | $20,010.25 |
| Topsoil Respread | 122 | Cy | 3.75 | $457.50 |
| 24" Curb & Gutter | 16 | Lf | 10.00 | $160.00 |
| 6" Mountable Curb | 83 | Lf | 5.50 | $456.50 |
| Concrete Paving | 1430 | Sy | 26.40 | $37,752.00 |
| 1" 426A Plant Mix (wear surface) | 4727 | Sy | 1.79 | $8,461.33 |
| 2" 327A Plant Mix (light duty) | 4251 | Sy | 3.15 | $13,390.65 |
| 3" 327A Plant Mix (medium duty) | 476 | Sy | 4.72 | $2,246.72 |
| 15" rcp class 3 | 8 | Lf | 25.00 | $200.00 |
| Grassing | 2 | Ac | 2000.00 | $4,000.00 |
| Construction Layout | 1 | Ls | 5500.00 | $5,500.00 |

Total Price    $145,264.95

| | | | |
|--|--|--|--|
| 6" Pump | 1 | Day | 210.00 |

Mr. Leon Carmichael          Title

3 - 25 - 03
Date

Reese & Howell Inc. (Rep)          Title

3-25-03
Date



**REESE AND HOWELL, INC.**

May 19, 2003

Carmichael Center - Montgomery, Alabama

Addititons To The Original Contract

Change Order #3

Addition To The South Parking Lot

| ITEM NO. | Item | Quantity | Unit | Unit Price | Total |
|---|---|---|---|---|---|
| 1 | Stripping (6" Thick) | 3,229 | C.Y. | $2.50 | $8,072.50 |
| 2 | Undercut | 4,397 | C.Y. | $2.50 | $10,992.50 |
| 3 | Inclassified Excavation | 1,049 | C.Y. | $2.50 | $2,622.50 |
| 4 | Borrow Excavation | 6,472 | C.Y. | $3.50 | $22,652.00 |
| 5 | Replace Undercut | 5,276 | C.Y. | $5.50 | $29,018.00 |
| 6 | Demolition | 1 | L.S. | $3,000.00 | $3,000.00 |
| 7 | Subgrade Preparaton | 16,124 | S.Y. | $1.00 | $16,124.00 |
| 8 | Clay Base (6") | 14,820 | S.Y. | $3.25 | $48,165.00 |
| 9 | Clay Base (4") | 4,072 | S.Y. | $3.00 | $12,216.00 |
| 10 | Topsoil Respread | 2,000 | C.Y. | $3.75 | $7,500.00 |
| 11 | 24" Curb & Gutter | 2,159 | L.F | $10.00 | $21,590.00 |
| 12 | 30" Curb & Gutter | 206 | L.F. | $12.00 | $2,472.00 |
| 13 | 6" Mountable Curb | 644 | L.F. | $5.50 | $3,542.00 |
| 14 | Asphalt Paving - Surface | 13,694 | S.Y. | $1.79 | $24,512.26 |
| 15 | Asphalt Paving (2") | 12,172 | S.Y. | $3.15 | $38,341.80 |
| 16 | Asphalt Paving  (3") | 1,522 | S.Y. | $4.78 | $7,275.16 |
| 17 | Double Flat Grate | 2 | EA. | $3,000.00 | $6,000.00 |
| 18 | Double Wing Outlet | 3 | EA. | $2,250.00 | $6,750.00 |
| 19 | Single Flat Grate | 3 | EA. | $2,500.00 | $7,500.00 |
| 20 | 15" RCP CL 3 | 320 | L.F. | $25.00 | $8,000.00 |
| 21 | 18" RCP CL 3 | 328 | L.F. | $28.00 | $9,184.00 |
| 22 | 30" RCP CL 3 | 120 | L.F. | $40.00 | $4,800.00 |
| 23 | 36" RCP CL 3 | 144 | L.F. | $50.00 | $7,200.00 |
| 24 | Engineering Controls | 1 | L.S. | $9,545.00 | $9,545.00 |
| | | | | **TOTAL** | **$317,074.72** |

Contractor's Initials: _Wm E. Howell_

Owner's Initials: _____

THE SIGNATURES BY THE ABOVE PARTIES UNDERSTAND THAT THE TOTAL PRICE OF $317,074.72 IS CONTINJUNCY BASED UPON VERIFICATION OF QUANTITIES IN THE APPROXIMATE AMOUNT OF $25,000

WITNESS: _____

334/286-0425 • Fax: 334/286-041



Owner:

    Leon Carmichael
    150 East Fleming Road
    Montgomery, Alabama  36105

**REESE AND HOWELL, INC.**

CONTRATOR:

    REESE & HOWELL, INC.
    101 MERIWETHER ROAD
    PIKE ROAD, ALABAMA  36064

| | |
|---|---|
| ESTIMATE #: | 9 |
| EST. DATE: | 10/01/03 |
| R&H JOB #: | 208 |
| DATE: | 10/01/03 |

Job:   Carmichael Center

| ITEM NO | ITEM DESCRIPTION | CONTRACT QUANTITY | UNIT | UNIT PRICE | QUANITY COMP. THIS ESTIMATE | TOTAL VALUE OF WORK THIS ESTIMATE | QUANITY COMP. TO DATE | TOTAL VALUE OF WORK TO DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | Mobilization | 1 | Ls | $6,000.00 | 0% | $0.00 | 100% | $6,000.00 |
| 2 | Stripping Topsoil (6" thick) | 9789 | Cy | $2.50 | 0.00 | $0.00 | 9789.00 | $24,472.50 |
| 3 | Stripping Wet Unclassified Excavation | 4982 | Cy | $2.50 | 0.00 | $0.00 | 4982.00 | $12,455.00 |
| 4 | 12" Undercut Front Parking Lot | 3005 | Cy | $2.50 | 0.00 | $0.00 | 3005.00 | $7,512.50 |
| 5 | 12" Replacement of Undercut | 3605 | Cy | $5.50 | 0.00 | $0.00 | 3605.00 | $19,827.50 |
| 6 | Unclassified Excavation | 9273 | Cy | $2.50 | 0.00 | $0.00 | 9273.00 | $23,182.50 |
| 7 | Borrow Excavation ( on site material ) | 12525 | Cy | $3.50 | 0.00 | $0.00 | 15525.00 | $54,337.50 |
| 8 | Subgrade Preparation | 38828 | Sy | $1.00 | 0.00 | $0.00 | 38828.00 | $38,828.00 |
| 9 | Clay Base (6") | 38238 | Sy | $3.25 | 0.00 | $0.00 | 38238.00 | $124,273.50 |
| 10 | Topsoil Respread | 2064 | Cy | $3.75 | 0.00 | $0.00 | 2064.00 | $7,740.00 |
| 11 | 24" Curb & Gutter | 2021 | Lf | $10.00 | 31.00 | $310.00 | 2052.00 | $20,520.00 |
| 12 | 6" Mountable Curb | 1678 | Lf | $5.50 | 0.00 | $0.00 | 1723.00 | $9,476.50 |
| 13 | 24" Rollback Curb | 63 | Lf | $11.00 | 0.00 | $0.00 | 63.00 | $693.00 |
| 14 | Handicap Ramps | 14 | Ea | $150.00 | 0.00 | $0.00 | 14.00 | $2,100.00 |
| 15 | 5' Wide Conc. Sidewalk | 253 | Sy | $20.00 | 16.50 | $330.00 | 269.50 | $5,390.00 |
| 16 | 6' Wide Conc. Sidewalk | 96 | Sy | $20.00 | 0.00 | $0.00 | 96.00 | $1,920.00 |
| 17 | 12' Wide Conc. Sidewalk | 198 | Sy | $20.00 | 0.00 | $0.00 | 198.00 | $3,960.00 |
| 18 | Concrete Paving | 1698 | Sy | $26.40 | 0.00 | $0.00 | 1698.00 | $44,827.20 |
| 19 | 1" 426A Plant Mix (wear surface) | 35631 | Sy | $1.79 | 0.00 | $0.00 | 0.00 | $0.00 |
| 20 | 2" 327A Plant Mix (light duty) | 29822 | Sy | $3.15 | 0.00 | $0.00 | 0.00 | $0.00 |
| 21 | 3" 327A Plant Mix (medium duty) | 5809 | Sy | $4.72 | 0.00 | $0.00 | 0.00 | $0.00 |
| 22 | Additional Mobilization (pavement) | 1 | Ls | $1,000.00 | 0% | $0.00 | 0% | $0.00 |
| 23 | 15" rcp class 3 | 264 | Lf | $25.00 | 0.00 | $0.00 | 264.00 | $6,600.00 |
| 24 | Slope Paved Headwall | 6 | Ea | $850.00 | 0.00 | $0.00 | 6.00 | $5,100.00 |
| 25 | Haybales | 20 | Ea | $7.00 | 0.00 | $0.00 | 0.00 | $0.00 |
| 26 | Construction Layout | 1 | Ls | $13,400.00 | 0% | $0.00 | 100% | $13,400.00 |
| 27 | Topography | 1 | Ls | $3,600.00 | 0% | $0.00 | 100% | $3,600.00 |
| 28 | 6" Pump Rental | Each | PD | $210.00 | 0.00 | $0.00 | 23.00 | $4,830.00 |
| 29 | Change Order #1 | 1 | L.S | $145,264.95 | 2.7540% | $4,000.60 | 83% | $121,166.84 |
| 30 | Change Order #3 | 1 | L.S. | $317,074.72 | 7.8166% | $24,784.50 | 63% | $199,739.50 |
| 31 | Change Order #4 | 1 | L.S. | $4,620.00 | 0.00 | $0.00 | 1.00 | $4,620.00 |
| 32 | Extra Work | 1 | L.S. | $6,495.00 | 0.00 | $0.00 | 1.00 | $6,495.00 |

| | | | |
|---|---|---|---|
| TOTAL VALUE OF WORK COMPLETED TO DATE | | $29,425.09 | $773,067.04 |
| | | | |
| SUB TOTAL | | $29,425.09 | $773,067.04 |
| LESS   PREVIOUS ESTIMATES | | $0.00 | $743,641.94 |

EXHIBIT 2

| | | | |
|---|---|---|---|
| CURRENT AMOUNT DUE THIS PAY ESTIMATE | | $29,425.09 | $29,425.09 |



**R E E S E  A N D  H O W E L L ,  I N C .**

Owner:

  Leon Carmichael
  150 East Fleming Road
  Montgomery, Alabama  36105

CONTRATOR:

  REESE & HOWELL, INC.
  101 MERIWETHER ROAD
  PIKE ROAD, ALABAMA  36064

| ESTIMATE #: | 8 |
|---|---|
| EST. DATE: | 06/26/03 |
| R&H JOB #: | 208 |
| DATE: | 07/28/03 |

Job:  Carmichael Center

| ITEM NO | ITEM DESCRIPTION | CONTRACT QUANTITY | UNIT | UNIT PRICE | QUANITY COMP. THIS ESTIMATE | TOTAL VALUE OF WORK THIS ESTIMATE | QUANITY COMP. TO DATE | TOTAL VALUE OF WORK TO DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | Mobilization | 1 | Ls | $6,000.00 | 0% | $0.00 | 100% | $6,000.00 |
| 2 | Stripping Topsoil (6" thick) | 9789 | Cy | $2.50 | 0 | $0.00 | 9789.00 | $24,472.50 |
| 3 | Stripping Wet Unclassified Excavation | 4982 | Cy | $2.50 | 0 | $0.00 | 4982.00 | $12,455.00 |
| 4 | 12" Undercut Front Parking Lot | 3005 | Cy | $2.50 | 0 | $0.00 | 3005.00 | $7,512.50 |
| 5 | 12" Replacement of Undercut | 3605 | Cy | $5.50 | 0 | $0.00 | 3605.00 | $19,827.50 |
| 6 | Unclassified Excavation | 9273 | Cy | $2.50 | 0 | $0.00 | 9273.00 | $23,182.50 |
| 7 | Borrow Excavation ( on site material ) | 12525 | Cy | $3.50 | 0 | $0.00 | 15525.00 | $54,337.50 |
| 8 | Subgrade Preparation | 38828 | Sy | $1.00 | 0 | $0.00 | 38828.00 | $38,828.00 |
| 9 | Clay Base (6") | 38238 | Sy | $3.25 | 0 | $0.00 | 38238.00 | $124,273.50 |
| 10 | Topsoil Respread | 2064 | Cy | $3.75 | 524 | $1,965.00 | 2064.00 | $7,740.00 |
| 11 | 24" Curb & Gutter | 2021 | Lf | $10.00 | 0 | $0.00 | 2021.00 | $20,210.00 |
| 12 | 6" Mountable Curb | 1678 | Lf | $5.50 | 45 | $247.50 | 1723.00 | $9,476.50 |
| 13 | 24" Rollback Curb | 63 | Lf | $11.00 | 0 | $0.00 | 63.00 | $693.00 |
| 14 | Handicap Ramps | 14 | Ea | $150.00 | 0 | $0.00 | 14.00 | $2,100.00 |
| 15 | 5' Wide Conc. Sidewalk | 253 | Sy | $20.00 | 0 | $0.00 | 253.00 | $5,060.00 |
| 16 | 6' Wide Conc. Sidewalk | 96 | Sy | $20.00 | 0.0 | $0.00 | 96.00 | $1,920.00 |
| 17 | 12' Wide Conc. Sidewalk | 198 | Sy | $20.00 | 0 | $0.00 | 198.00 | $3,960.00 |
| 18 | Concrete Paving | 1698 | Sy | $26.40 | 0 | $0.00 | 1698.00 | $44,827.20 |
| 19 | 1" 426A Plant Mix (wear surface) | 35631 | Sy | $1.79 | 0 | $0.00 | 0.00 | $0.00 |
| 20 | 2" 327A Plant Mix (light duty) | 29822 | Sy | $3.15 | 0 | $0.00 | 0.00 | $0.00 |
| 21 | 3" 327A Plant Mix (medium duty) | 5809 | Sy | $4.72 | 0 | $0.00 | 0% | $0.00 |
| 22 | Additional Mobilization (pavement) | 1 | Ls | $1,000.00 | 0% | $0.00 | 264.00 | $6,600.00 |
| 23 | 15" rcp class 3 | 264 | Lf | $25.00 | 0 | $0.00 | 6.00 | $5,100.00 |
| 24 | Slope Paved Headwall | 6 | Ea | $850.00 | 0 | $0.00 | 0.00 | $0.00 |
| 25 | Haybales | 20 | Ea | $7.00 | 0 | $0.00 | 100% | $13,400.00 |
| 26 | Construction Layout | 1 | Ls | $13,400.00 | 0% | $0.00 | 100% | $3,600.00 |
| 27 | Topography | 1 | Ls | $3,600.00 | 0% | $0.00 | 23.00 | $4,830.00 |
| 28 | 6" Pump Rental | Each | PD | $210.00 | 0 | $0.00 | 81% | $117,166.2 |
| 29 | Change Order #1 | 1 | L.S. | $145,264.95 | 0.0000% | $0.00 | 55% | $174,955.0 |
| 30 | Change Order #3 | 1 | L.S. | $317,074.72 | 12.4831% | $39,580.66 | 1.00 | $4,620.0 |
| 31 | Change Order #4 | 1 | L.S. | $4,620.00 | 0.0 | $0.00 | 1.00 | $6,495.0 |
| 32 | Extra Work | 1 | L.S. | $6,495.00 | 1.0 | $6,495.00 | | $743,641.9 |

TOTAL VALUE OF WORK COMPLETED TO DATE $48,288.16

| | | | |
|---|---|---|---|
| SUB TOTAL | | $48,288.16 | $743,641.9 |
| LESS  PREVIOUS ESTIMATES | | $0.00 | $590,699.7 |
| PLUS  AMOUNT UNPAID PREVIOUS ESTIMATE | | $104,654.03 | |
| CURRENT AMOUNT DUE THIS PAY ESTIMATE | | $152,942.19 | $152,942.1 |



RLPY 2780 PAGE 0014

STATE OF ALABAMA
MONTGOMERY COUNTY

## <u>VERIFIED STATEMENT OF LIEN</u>

Reese & Howell, Inc., files this statement in writing, verified by the oath of Pickett Reese, Vice President, who has personal knowledge of the facts set forth herein:

That Reese & Howell, Inc., claims a lien upon the following property, situated in Montgomery County, Alabama, to-wit:

**That property commonly known as The Carmichael Center, 150 East Fleming Road, Montgomery, Alabama, 36105**

That said lien is claimed, separately and severally, as to both the buildings and improvements thereon, and the said land.

That said lien is claimed to secure an indebtedness of $182,367.28, with interest thereon from October 1, 2003, for materials and for labor supplied for the excavation, grading, stripping, curb and gutter, sidewalk, and other site preparation work on the property known as the Carmichael Center.

The name of the owner of said property is Leon Carmichael.

[THIS SPACE LEFT BLANK INTENTIONALLY]

138596.1

**EXHIBIT 3**

RLPY 2780  PAGE  0015

Dated this 19th day of November, 2003

REESE & HOWELL, INC.

BY: Pickett Reese
its: Vice President

STATE OF ALABAMA          ]

COUNTY OF MONTGOMERY     ]

    I, the undersigned authority, in and for said County and State, hereby certify that Pickett Reese, whose name as Vice President of REESE & HOWELL, LLC, is signed to the foregoing Statement of Lien, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such and with full authority, executed the same voluntarily on the day the same bears date, for and on behalf of said corporation.

    GIVEN under my hand and seal on this 19th day of November, 2003.

Notary Public

[SEAL]

My Commission Expires: _12/05/05_

This instrument Prepared by:
Paul A. Clark, Esq.
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, Alabama 36101

138596.1

STATE OF ALABAMA
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON
2003 NOV 20  AM 8: 19
REESE McKINNEY, JR.
JUDGE OF PROBATE

INDEX-------0.50
JUDGE          5.00
RECORD FEE     1.00
RECORD FEE     5.00
CASH          11.00

11-20-2003 #1     ITEM   3
1CL            8441 09:17TH

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

REESE & HOWELL, INC.                    )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )    CIVIL ACTION NO. CV-03-2988
                                        )
LEON CARMICHAEL, SR.                    )
                                        )
            Defendant.                  )

## ORDER

This matter having come before the Court on the parties' Joint Motion for Emergency

Approval of Plan for Lien Transfer, it is hereby:

ORDERED, ADJUDGE, AND DECREED as follows:

1.    The parties' proposed plan for transferring Reese & Howell, Inc.'s materialman

lien to the proceeds realized from the sale of the Carmichael Center is hereby APPROVED;

2.    Any requirement created by Ala. Code § 35-11-233 (1975) that the sales proceeds

from the Carmichael Center be deposited with this Court is hereby WAIVED by agreement of

the parties;

3.    The enforcement of any provision of Alabama law which would require this Court

to first obtain jurisdiction over the sale proceeds from the Carmichael Center in order to affect

the transfer contemplated herein is hereby WAIVED by agreement of the parties.

4.    This Court's Order directing the parties to mediation is hereby stayed.

DONE this the _28th_ day of June, 2006.


_Paul Clark - Balch + Bingham_
_Knox Argo._

_Will a. Shaly_
CIRCUIT JUDGE


169376.1

**EXHIBIT B**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA        )
                                )
            v.                  )        CR. NO. 2:03-cr-259-T
                                )
LEON CARMICHAEL, SR.,           )
also known as BEAVER LEON       )
CARMICHAEL                      )

SECOND PRELIMINARY ORDER OF FORFEITURE

WHEREAS, in the Forfeiture Allegation of the Superseding Indictment for forfeiture of property in the above case, the United States sought forfeiture of specific property.

IT IS HEREBY ORDERED THAT the government's motion to enter second preliminary order of forfeiture (Doc. no. 479) is granted by consent of all parties as follows:

1.    As the result of the guilty verdict on Count 1 of the Superseding Indictment, for which the Government sought forfeiture pursuant to Title 21, United States Code, Section 853, the defendant Leon Carmichael, Sr. shall forfeit to the United States:

a.    The real property known as the Carmichael Center located on Fleming Road in Montgomery, Alabama, being more particularly described as follows:

> Commence at the Northwest Corner of the Southwest Quarter of Section 31, T-16-N, R-18-E, Montgomery County, Alabama; Thence run N 89° 25' E, 460.00 Feet to a point; Thence run South 20.00 Feet to a point lying on the South right-of-way of Fleming Road (40' ROW); Thence run along said South right-of-way, N 89° 25'E,

**EXHIBIT C**

872.25 Feet to the Northeast Corner of Lot A, according to the map of Star Construction Plat No. 1, as recorded in the Office of the Judge of Probate, Montgomery, County, Alabama, in Plat Book 36 at Page 247, said point being the point of beginning; Thence from said point of beginning, continue along said South right-of-way, N 89º 25'E, 544.5 Feet to a point; Thence leave said right-of-way and run South 480.0 Feet to a point; Thence run S 89º 25'W, 544.5 Feet to the Southeast Corner of the aforementioned Lot A; Thence run along the East line of said Lot A, North 480.0 Feet to the point of beginning.

Said described property lying and being situated in the Southwest Quarter of Section 31, T-16-N, R-18-E, Montgomery, Alabama, and contains 6.000 acres, more or less.

The above description was taken from a plat of a survey prepared by Roy Jones, Surveyor, Certificate No. 17267, dated May 23, 1994,

(Above described property hereinafter identified as the "Carmichael Center");

and,

    b.   One   2001   Honda   Accord   EX,   VIN: 1HGCG16521A033354 (hereinafter identified as the "Honda").

    2.   The Court has determined, based on the record, the settlement statements of the parties and the forfeiture allegation in the Superseding Indictment, that the Carmichael Center and the Honda are subject to forfeiture pursuant to Title 21, United States Code, Section 853, that defendant Leon Carmichael, Sr. has an interest in said property and, that the government has established

2

the requisite nexus between said property and the offenses for which defendant Leon Carmichael, Sr. was found guilty.

3.    Upon the entry of this Order, the United States Attorney General (or a designee) is authorized to seize the Carmichael Center and the Honda, and to conduct any discovery proper in identifying, locating or disposing of said property, in accordance with Fed. R. Crim. P. 32.2(b)(3).

4.    Upon entry of this Order, the United States Attorney General (or a designee) is authorized to commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of this Order.

5.    The United States shall publish notice of the Order and its intent to dispose of the Carmichael Center and the Honda in such a manner as the United States Attorney General (or a designee) may direct.  The United States may also, to the extent practicable, provide written notice to any person known to have an alleged interest in said property.

6.    Any person, other than the above named defendant, asserting a legal interest in the Carmichael Center or the Honda may, within thirty days of the final publication of notice or receipt of notice, whichever is earlier, petition the court for a hearing without a jury to adjudicate the validity of his alleged interest in the said property, and for an amendment of the order of

3

forfeiture pursuant to Title 21, United States Code, Section 853(n)(6).

7. Pursuant to Fed. R. Crim. P. 32.2(b)(3), this Second Preliminary Order of Forfeiture shall become final as to the defendant at the time of sentencing [or before sentencing if the defendant consents] and shall be made part of the sentence and included in the judgment. If no third party files a timely claim, this Order shall become the Final Order of Forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2).

8. Any petition filed by a third party asserting an interest in the Carmichael Center or the Honda shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest and the time and circumstances of the petitioner's acquisition of the right, title or interest in said property, any additional facts supporting the petitioner's claim and the relief sought.

9. Upon the filing of any motion under Fed.R.Crim.P. 32.2(c)(1)(A) and Title 21, United States Code, Section 853(n) and pursuant to Fed.R.Crim.P. 32.2(c)(1)(B) and before a hearing, discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues.

10. The United States shall have clear title to the Carmichael Center and Honda following the Court's disposition of

4

all third-party interests, or, if none, following the expiration of the period provided in Title 21, United States Code, Section 853(n)(2) for the filing of third party petitions.

11.   Upon entry of this Order, the United States will file documents with the Montgomery County, Alabama Judge of Probate to release its lis pendens against the real properties located at 4621 Rosa Parks Avenue, Montgomery, Alabama and 3226 Brookwood Drive, Montgomery, Alabama. The United States will also release to defendant Leon Carmichael Sr.'s attorney, Susan G. James, Esq., the Five Thousand Dollars ($5,000.00) in United States currency seized on or about November 17, 2003, and One Thousand Seven Hundred Eighty-One Dollars ($1,781.00) in United States currency seized on or about November 17, 2003.

12.   The Court shall retain jurisdiction to enforce this Order and to amend it as necessary, pursuant to Fed.R.Crim.P. 32.2(e).

13.   The Clerk of the Court shall forward four certified copies of this Order to the United States Attorney's Office for the Middle District of Alabama.

DONE, this the 15th day of August, 2005.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

5

RECEIVED

2005 SEP 13 P 4: 41

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **LEON CARMICHAEL, SR.,** | )   **CR. NO. 2:03-cr-259-T** |
| **also known as BEAVER LEON** | ) |
| **CARMICHAEL** | ) |
| | ) |
| **Defendant.** | ) |

**PETITIONER'S CLAIM OF INTEREST IN PROPERTY SUBJECT
TO SECOND PRELIMINARY ORDER OF FORFEITURE**

Petitioner, Reese & Howell, Inc. ("R&H"), pursuant to Federal Rule of Criminal

Procedure 32.2 and 21 U.S.C. § 853(n) and this Court's orders of forfeiture entered on August 1,

2005 and August 16, 2005, hereby asserts an interest in the real property known as the

Carmichael Center and which is more particularly described in the Court's Second Preliminary

Order of Forfeiture and requests the Court to adjudicate its rights and/or interest in said property

and to order that R&H's lien against the subject property be satisfied from the proceeds of the

sale of the Carmichael Center. In support of this petition, R&H states as follows:

1.      R&H is a construction company located in Montgomery, Alabama. On November

22, 2002, R&H and Leon Carmichael, Sr. ("Carmichael"), the defendant in the above-styled

action, entered into a Contract whereby R&H agreed to perform work and labor on the property

known as the Carmichael Center. (*See* Affidavit of Pickett Reese, attached as Exhibit "A," and

Contract, attached as Exhibit 1 to Ex. A.). During the course of the work on the Carmichael

Center, and pursuant to the Contract, Carmichael was billed for unpaid materials provided and

160167.1

Exhibit D

services rendered by R&H. (Ex. A and B). Carmichael did not pay R&H for the materials and labor billed to Carmichael. (*Id.*) The total amount owed R&H is $182,367.28. (*Id.*).

2.     Following Carmichael's refusal to pay, R&H filed a materialman's lien against the property owned by Carmichael in the amount owed, $182,367.28 (*Id.*). That lien was duly executed and recorded in the Office of the Judge of Probate of Montgomery County, Alabama, on November 19, 2003. (*Id.*). A verified statement of the lien is recorded in Real Property Book 2780 Page 14. A copy of the verified statement of the lien is attached as Exhibit 3 to Ex. A.

3.     On January 6, 2004, R&H filed a civil action against Carmichael in the Circuit Court of Montgomery County. (*See* Reese & Howell's Answer and Counterclaim, attached as Exhibit "B"). In the complaint, R&H asserted causes of action for open account, account stated and breach of contract and further sought to enforce the valid and duly executed materialman's lien on the Carmichael Center. (*See id.*). R&H's case against Carmichael is currently pending in the Circuit Court of Montgomery County.

4.     This Court previously entered a First Preliminary Order of Forfeiture as to certain property of Leon Carmichael, Sr., that is a proceeds judgment in favor of the United States in the amount of $1,000,000.00. The money judgment levied against Carmichael was not satisfied and on August 1, 2005, this Court entered an Order of Forfeiture as to Certain Substitute Property of Defendant Leon Carmichael, Sr. to add certain real property in substitution for the unsatisfied proceeds judgment. On August 16, 2005, this Court entered a Second Preliminary Order of Forfeiture to designate the property known as the Carmichael Center as additional real property subject to the forfeiture order against Carmichael.

5.     R&H requests a hearing on the issues raised in this petition.

WHEREFORE, Petitioner, R&H, requests this Court to adjudicate its lawful and valid rights and/or interest in the real property known as the Carmichael Center and to order that R&H's lien against the subject property be satisfied from the proceeds of the sale of the Carmichael Center.

Respectfully submitted this 13ᵗʰ day of September, 2005.

_Pickett n Reese_

PICKETT REESE - PETITIONER

Sworn to and subscribed before me on this the _13ᵗʰ_ day of September, 2005.

(SEAL)

Notary Public

My Commission Expires: _1-27-07_

_W. Joseph McCorkle, Jr._    GLA
/s W. Joseph McCorkle, Jr.
W. Joseph McCorkle, Jr.
Paul A. Clark
Attorneys for Petitioner Reese & Howell, Inc.
BALCH & BINGHAM LLP
105 Tallapoosa Street
Suite 200
Montgomery, AL 36104-2549
Telephone: (334) 834-6500
Facsimile: (866) 783-2741
E-mail: jmccorkl@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this the 13th day of September, 2005:

Mary Elizabeth Anthony
Anthony & Pratt LLC
1905 14th Avenue South
Birmingham, Alabama 35205

Ronald Ray Brunson
McCord and Brunson
2126 Morris Avenue
Birmingham, Alabama 35203

Marion D. Chartoff
Law Office of Marion Chartoff
505 South Perry Street
Montgomery, Alabama 36104

Roianne Houlton Conner
Law Office of Roianne Houlton Conner
250 Winton Blount Loop
P. O. Box 240458
Montgomery, Alabama 36124

Frederick Enslen, Jr.
Frederick T. Enslen, PC
P. O. Box 240848
Montgomery, Alabama 36124-0848

Stephen P. Feaga
U.S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36101-0197

Stephen Roger Glassroth
The Glassroth Law Firm, PC
P. O. Box 910
Montgomery, Alabama 36101-0910

Michael A. Griggs
Chambless & math PC
5720 Carmichael Road
P. O. Box 230759
Montgomery, Alabama 36123-0759

John T. Harmon
U.S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36101-0197

Susan Graham James
Susan G. James & Associates
P. O. Box 198
Montgomery, Alabama 36101-0198

Bruce Maddox
Law Office of Bruce Maddox
6728 Taylor Court
Montgomery, Alabama 36117

Matthew S. Miner
U.S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36101-0197

Terry F. Moorer
U.S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36101-0197

A. Clark Morris
U.S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36101-0197

Amardo Wesley Pitters
A. Wesley Pitters, P.C.
1145 South Perry Street
Montgomery, Alabama 36104

Lisa Monet Wayne
950 Seventeenth Street
Suite 1700
Denver, Colorado 80202

160167.1

5

Ronald Wayne Wise
Law Office of Ronald W. Wise
2000 Interstate Park Drive
Suite 105
Montgomery, Alabama 36109

      I further certify that I have served a copy of the foregoing on the following by placing said copy in the United States mail, postage prepaid and addressed as follows:

J. Knox Argo, Esq.
J. Knox Argo, P.C.
6706 Taylor Circle
Montgomery, Alabama 36117

                        Respectfully submitted,

                        /s W. Joseph McCorkle, Jr.
                        W. Joseph McCorkle, Jr.
                        Paul A. Clark
                        Attorneys for Petitioner Reese & Howell, Inc.
                        BALCH & BINGHAM LLP
                        105 Tallapoosa Street
                        Suite 200
                        Montgomery, AL 36104-2549
                        Telephone: (334) 834-6500
                        Facsimile: (866) 783-2741
                        E-mail: jmccorkl@balch.com

160167.1

# EXHIBIT A

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

SHERMAN INDUSTRIES, INC.      )
                                     )
         Plaintiff,          )
                                     )
v.                                )     CIVIL ACTION NO. CV-03-2988
                                   )
REESE & HOWELL, INC., et al.,   )
                                   )
        Defendants.     )

### AFFIDAVIT OF PICKETT REESE

STATE OF ALABAMA       )
COUNTY OF MONTGOMERY  )

Before me, the undersigned authority in and for said County and State, personally appeared Picket Reese, who by me being first duly sworn, did and does depose and say the following:

"I, Pickett Reese, the undersigned, am a resident of the State of Alabama and above the age of nineteen years. I am an officer of Reese & Howell, Inc. ("Reese & Howell"), and have personal knowledge of the facts set forth in this statement.

Reese & Howell was selected by Carmichael to perform work and labor on the property commonly known as the Carmichael Center which is located at 150 E. Fleming Road, Montgomery, Alabama. On November 22, 2002, Reese & Howell and Carmichael entered into a contract ("Contract") defining their respective duties in regards to the materials and labor supplied for the excavation, grading, stripping, curb and gutter, sidewalk, paving, and other site preparation work on the Carmichael Center. A true and correct copy of the contract between Reese & Howell and Carmichael is attached to this affidavit as Exhibit 1.

Reese & Howell performed all of the work required under the Contract. The property owned by Carmichael upon which Reese & Howell performed work under the Contract was

160674.1

substantially enhanced in value by virtue of the labor, materials, and supplies provided by Reese & Howell.

During the course of the Carmichael project, Carmichael was billed for unpaid materials provided and services rendered by Reese & Howell. Carmichael has not paid Reese & Howell for the unpaid materials and labor billed to Carmichael in Estimates 8 and 9. The total unpaid amount owed Reese & Howell is $182,367.28. True and correct copies of Estimates 8 and 9 are attached collectively as Exhibit 2 to this affidavit.

Reese & Howell filed a materialman's lien against the property owned by Carmichael in the amount of $182,367.28. That lien was duly executed and recorded in the Office of the Judge of Probate of Montgomery County, Alabama, on November 19, 2003. A verified statement of the lien is recorded in Real Property Book 2780 Page 14. A true and correct copy of the verified statement of Reese & Howell's lien is attached as Exhibit 3 to this affidavit.

On several occasions, I attended meetings with Carmichael and the president of Reese & Howell, Frank Howell, during which Carmichael was presented with copies of the unpaid estimates and a demand was made for the total unpaid amount due. Carmichael did not dispute the amount owed to Reese & Howell. Rather, Carmichael acknowledged that he owed the amounts set forth in Estimates 8 and 9.

[THIS SPACE LEFT INTENTIONALLY BLANK]

FURTHER AFFIANT SAYETH NOT.

_____

PICKETT REESE

Sworn to and subscribed before me on this the 13th day of September, 2005.

[SEAL]

_____

Notary Public

My Commission Expires: _____

**My Commission Expires 11-19-2006**

160674.1

3

# EXHIBIT 1
# TO
# EXHIBIT A



**REESE AND HOWELL, INC.**

| | |
|---|---|
| THE STATE OF ALABAMA     ] | AGREEMENT BETWEEN |
| COUNTY OF <u>Montgomery</u>     ] | CONTRACTOR AND OWNER |

      **THIS AGREEMENT** made and entered into on this <u>22nd</u> day of <u>November, 2002</u>, between <u>Leon Carmichael</u>, of <u>Montgomery, Alabama</u>, hereinafter called Owner, and <u>Reese & Howell, Inc.</u>, of <u>Pike Road, Alabama</u>, hereinafter called the Contractor;

WITNESSETH:

1.     Scope of Work: The Contractor will furnish all material associated with Attachment "A". The material will be placed in mutual agreement between the contractor and the owner, for the expansion of owners parking area.

2.     Insurance: Workman's Compensation and other insurance as may be required by federal, state and local laws on street, sewer and water projects will be procured by the contractor and maintained by it for the duration of the contract. Liability insurance will be payable to the Owner and Contractor as their interest may appear.

3.     Contact Price: The Owner agrees to pay the Contractor those prices as shown on Attachment "A".

     (a) Each month, the contractor will prepare an estimate for the portion of work performed thereof up to the first day of that month. This amount will then be due to the contractor, by the 15th day of that month less the aggregate of previous payments; and

     (b) Payments due Contractor which are not paid in accordance herewith shall bear interest at the rate of <u>1 1/2</u> percent per month (18% annually). In the event it should become necessary to employ counsel to collect this obligation, Owner agrees to pay court cost and reasonable attorney's fee for the services of such attorney, whether suit is brought or not.

     The Contractor and the Owner, for themselves, their heirs, successors, executors, administrators and assigns, hereby agree to the full performance of the covenants herein contained.

| | |
|---|---|
| <u>    Leon Carmichael    </u> | <u>   Reese & Howell, Inc.   </u> |
| Owner | Contractor |
| <u>12 - 4 - 02</u> | <u>12 - 4 - 02</u> |
| Date | Date |
| By: | By: |
| Its:    <u>OWNER</u> | Its: |

**EXHIBIT 1**

# EXHIBIT 2
# TO
# EXHIBIT A

Attachment "A" -Reese & Howell, Inc.

Project No.: Carmichael Center

| Description | Quantity | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Mobilization | 1 | L.S. | 6,000.00 | 6,000.0 |
| Stripping of Topsoil | 0 | C.Y. | 2.50 | 0.0 |
| Unclassified Excavation (Cut Around Building) | 1,958 | C.Y. | 2.50 | 4,895.0 |
| Borow Excavation | 7,469 | C.Y. | 5.50 | 41,079.5 |
| Subgrade Preparation | 21,129 | S.Y. | 1.00 | 21,129.0 |
| Clay Gravel Base (6"Thick) | 21,129 | S.Y. | 3.25 | 68,669.2 |
| 15" RCP (Class 3) | 112 | L.F. | 30.00 | 3,360.0 |
| Engineering Controls | 0 | Hr. | 100.00 | 0.0 |
| | | | TOTAL | 145,132. |

Contractor's Initials: _Th E. Hall_

Owner's Initials: _Leon Carmichael_

Attachment "A" -Reese & Howell, Inc.

Project No.: Carmichael Center

| Description | Quantity | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Mobilization | 1 | L.S. | 6,000.00 | 6,000.00 |
| Stripping Topsoil (6" Thick) | 6,389 | C.Y. | 2.50 | 15,972.50 |
| Stripping Wet Unclassified Excavation | 4,982 | C.Y. | 2.50 | 12,455.00 |
| 12" Undercut Front Parking Lot | 1,133 | C.Y. | 2.50 | 2,832.50 |
| 12" Replacement of Undercut | 1,359 | C.Y. | 5.50 | 7,474.50 |
| Unclassified Excavation   (4325) | 9,273 | C.Y. | 2.50 | 23,182.50 |
| Borrow Excavation (On Site Material) | 12,525 | C.Y. | 3.50 | 43,837.50 |
| Subgrade Preparation | 38,828 | S.Y. | 1.00 | 38,828.00 |
| Clay Base (6") | 38,238 | S.Y. | 3.25 | 124,273.50 |
| Topsoil Respread | 2,064 | C.Y. | 3.75 | 7,740.00 |
| 24" Curb & Gutter | 2,021 | L.F. | 10.00 | 20,210.00 |
| 6" Mountable Curb | 1,678 | L.F. | 5.50 | 9,229.00 |
| 24" Rollback Curb | 63 | L.F. | 11.00 | 693.00 |
| Handicap Ramps | 14 | EA. | 150.00 | 2,100.00 |
| 5' Wide Conc. Sidewalk | 253 | S.Y. | 20.00 | 5,060.00 |
| 6' Wide Conc. Sidewalk | 96 | S.Y. | 20.00 | 1,920.00 |
| 12' Wide Conc. Sidewalk | 198 | S.Y. | 20.00 | 3,960.00 |
| Concrete Paving | 1,698 | S.Y. | 26.40 | 44,827.20 |
| 1" 426A Plant Mix (Wear. Surface) | 35,631 | S.Y. | 1.79 | 63,779.49 |
| 2" 327A Plant Mix (Light Duty) | 29,822 | S.Y. | 3.15 | 93,939.30 |
| 3" 327A Plant Mix (Medium Duty) | 5,809 | S.Y. | 4.72 | 27,418.48 |
| Additional Mobilization (Pavement) | 1 | L.S. | 1,000.00 | 1,000.00 |
| 15" RCP Class 3 | 264 | L.F. | 25.00 | 6,600.00 |
| Slope Paved Headwall | 6 | EA. | 850.00 | 5,100.00 |
| Haybales | 20 | EA. | 7.00 | 140.00 |
| Construcion Layout | 1 | L.S. | 13,400.00 | 13,400.00 |
| Topography | 1 | L.S. | 3,600.00 | 3,600.00 |
| | | | TOTAL | 585,572.47 |

Contractor's Initials:_____

Owner's Initials:_____

FILE

**REESE AND HOWELL, INC.**

March 24, 2003
Carmichael Center, Montgomery Alabama
Additions to the original contract

Change Order #1
Addition to the south parking lot

| Item | Quantity | Unit | Unit Price | Total |
|------|----------|------|-----------|-------|
| Stripping Topsoil (6" thick) | 198 | Cy | 2.50 | $495.00 |
| Undercut Parking Lot | 667 | Cy | 2.50 | $1,667.50 |
| Replacement of Undercut | 800 | Cy | 5.50 | $4,400.00 |
| Borrow Excavation ( on site material ) | 11403 | Cy | 3.50 | $39,910.50 |
| Subgrade Preparation | 6157 | Sy | 1.00 | $6,157.00 |
| Clay Base (6") | 6157 | Sy | 3.25 | $20,010.25 |
| Topsoil Respread | 122 | Cy | 3.75 | $457.50 |
| 24" Curb & Gutter | 16 | Lf | 10.00 | $160.00 |
| 6" Mountable Curb | 83 | Lf | 5.50 | $456.50 |
| Concrete Paving | 1430 | Sy | 26.40 | $37,752.00 |
| 1" 426A Plant Mix (wear surface) | 4727 | Sy | 1.79 | $8,461.33 |
| 2" 327A Plant Mix (light duty) | 4251 | Sy | 3.15 | $13,390.65 |
| 3" 327A Plant Mix (medium duty) | 476 | Sy | 4.72 | $2,246.72 |
| 15" rcp class 3 | 8 | Lf | 25.00 | $200.00 |
| Grassing | 2 | Ac | 2000.00 | $4,000.00 |
| Construction Layout | 1 | Ls | 5500.00 | $5,500.00 |

Total Price    $145,264.95

| | 1 | Day | 210.00 | |
|---|---|---|---|---|
| 6" Pump | | | | |

Mr. Leon Carmichael          Title

3 - 25 - 03
Date

Reese & Howell Inc. (Rep)          Title

3-25-03
Date



## REESE AND HOWELL, INC.

May 19, 2003
Carmichael Center - Montgomery, Alabama
Addititons To The Original Contract

Change Order #3
Addition To The South Parking Lot

| ITEM NO. | Item | Quantity | Unit | Unit Price | Total |
|---|---|---|---|---|---|
| 1 | Stripping (6" Thick) | 3,229 | C.Y. | $2.50 | $8,072.50 |
| 2 | Undercut | 4,397 | C.Y. | $2.50 | $10,992.50 |
| 3 | Inclassified Excavation | 1,049 | C.Y. | $2.50 | $2,622.50 |
| 4 | Borrow Excavation | 6,472 | C.Y. | $3.50 | $22,652.00 |
| 5 | Replace Undercut | 5,276 | C.Y. | $5.50 | $29,018.00 |
| 6 | Demolition | 1 | L.S. | $3,000.00 | $3,000.00 |
| 7 | Subgrade Preparaton | 16,124 | S.Y. | $1.00 | $16,124.00 |
| 8 | Clay Base (6") | 14,820 | S.Y. | $3.25 | $48,165.00 |
| 9 | Clay Base (4") | 4,072 | S.Y. | $3.00 | $12,216.00 |
| 10 | Topsoil Respread | 2,000 | C.Y. | $3.75 | $7,500.00 |
| 11 | 24" Curb & Gutter | 2,159 | L.F | $10.00 | $21,590.00 |
| 12 | 30" Curb & Gutter | 206 | L.F. | $12.00 | $2,472.00 |
| 13 | 6" Mountable Curb | 644 | L.F. | $5.50 | $3,542.00 |
| 14 | Asphalt Paving - Surface | 13,694 | S.Y. | $1.79 | $24,512.26 |
| 15 | Asphalt Paving (2") | 12,172 | S.Y. | $3.15 | $38,341.80 |
| 16 | Asphalt Paving (3") | 1,522 | S.Y. | $4.78 | $7,275.16 |
| 17 | Double Flat Grate | 2 | EA. | $3,000.00 | $6,000.00 |
| 18 | Double Wing Outlet | 3 | EA. | $2,250.00 | $6,750.00 |
| 19 | Single Flat Grate | 3 | EA. | $2,500.00 | $7,500.00 |
| 20 | 15" RCP CL 3 | 320 | L.F. | $25.00 | $8,000.00 |
| 21 | 18" RCP CL 3 | 328 | L.F. | $28.00 | $9,184.00 |
| 22 | 30" RCP CL 3 | 120 | L.F. | $40.00 | $4,800.00 |
| 23 | 36" RCP CL 3 | 144 | L.F. | $50.00 | $7,200.00 |
| 24 | Engineering Controls | 1 | L.S. | $9,545.00 | $9,545.00 |
| | | | | TOTAL | $317,074.72 |

Contractor's Initials: _Jhn E. Howell_

Owner's Initials: _____

THE SIGNATURES BY THE ABOVE PARTIES UNDERSTAND
THAT THE TOTAL PRICE OF $317,074.72 IS CONTINJUNCY
BASED UPON VERIFICATION OF QUANTITIES IN THE
APPROXIMATE AMOUNT OF $25,000

WITNESS:

**R·H HOWELL**

**REESE AND HOWELL, INC.**

Owner:

Leon Carmichael
150 East Fleming Road
Montgomery, Alabama  36105

CONTRATOR:

REESE & HOWELL, INC.
101 MERIWETHER ROAD
PIKE ROAD, ALABAMA  36064

| | | |
|---|---|---|
| ESTIMATE #: | | 9 |
| EST. DATE: | | 10/01/03 |
| R&H JOB #: | | 208 |
| DATE: | | 10/01/03 |

Job:    Carmichael Center

| ITEM NO | ITEM DESCRIPTION | CONTRACT QUANTITY | UNIT | UNIT PRICE | QUANITY COMP. THIS ESTIMATE | TOTAL VALUE OF WORK THIS ESTIMATE | QUANITY COMP. TO DATE | TOTAL VALUE OF WORK TO DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | Mobilization | 1 | Ls | $6,000.00 | 0% | $0.00 | 100% | $6,000.00 |
| 2 | Stripping Topsoil (6" thick) | 9789 | Cy | $2.50 | 0.00 | $0.00 | 9789.00 | $24,472.50 |
| 3 | Stripping Wet Unclassified Excavation | 4982 | Cy | $2.50 | 0.00 | $0.00 | 4982.00 | $12,455.00 |
| 4 | 12" Undercut Front Parking Lot | 3005 | Cy | $2.50 | 0.00 | $0.00 | 3005.00 | $7,512.50 |
| 5 | 12" Replacement of Undercut | 3605 | Cy | $5.50 | 0.00 | $0.00 | 3605.00 | $19,827.50 |
| 6 | Unclassified Excavation | 9273 | Cy | $2.50 | 0.00 | $0.00 | 9273.00 | $23,182.50 |
| 7 | Borrow Excavation ( on site material ) | 12525 | Cy | $3.50 | 0.00 | $0.00 | 15525.00 | $54,337.50 |
| 8 | Subgrade Preparation | 38828 | Sy | $1.00 | 0.00 | $0.00 | 38828.00 | $38,828.00 |
| 9 | Clay Base (6") | 38238 | Sy | $3.25 | 0.00 | $0.00 | 38238.00 | $124,273.50 |
| 10 | Topsoil Respread | 2064 | Cy | $3.75 | 0.00 | $0.00 | 2064.00 | $7,740.00 |
| 11 | 24" Curb & Gutter | 2021 | Lf | $10.00 | 31.00 | $310.00 | 2052.00 | $20,520.00 |
| 12 | 6" Mountable Curb | 1678 | Lf | $5.50 | 0.00 | $0.00 | 1723.00 | $9,476.50 |
| 13 | 24" Rollback Curb | 63 | Lf | $11.00 | 0.00 | $0.00 | 63.00 | $693.00 |
| 14 | Handicap Ramps | 14 | Ea | $150.00 | 0.00 | $0.00 | 14.00 | $2,100.00 |
| 15 | 5' Wide Conc. Sidewalk | 253 | Sy | $20.00 | 16.50 | $330.00 | 269.50 | $5,390.00 |
| 16 | 6' Wide Conc. Sidewalk | 96 | Sy | $20.00 | 0.00 | $0.00 | 96.00 | $1,920.00 |
| 17 | 12' Wide Conc. Sidewalk | 198 | Sy | $20.00 | 0.00 | $0.00 | 198.00 | $3,960.00 |
| 18 | Concrete Paving | 1698 | Sy | $26.40 | 0.00 | $0.00 | 1698.00 | $44,827.20 |
| 19 | 1" 426A Plant Mix (wear surface) | 35631 | Sy | $1.79 | 0.00 | $0.00 | 0.00 | $0.00 |
| 20 | 2" 327A Plant Mix (light duty) | 29822 | Sy | $3.15 | 0.00 | $0.00 | 0.00 | $0.00 |
| 21 | 3" 327A Plant Mix (medium duty) | 5809 | Sy | $4.72 | 0.00 | $0.00 | 0.00 | $0.00 |
| 22 | Additional Mobilization (pavement) | 1 | Ls | $1,000.00 | 0% | $0.00 | 0% | $0.00 |
| 23 | 15" rcp class 3 | 264 | Lf | $25.00 | 0.00 | $0.00 | 264.00 | $6,600.00 |
| 24 | Slope Paved Headwall | 6 | Ea | $850.00 | 0.00 | $0.00 | 6.00 | $5,100.00 |
| 25 | Haybales | 20 | Ea | $7.00 | 0.00 | $0.00 | 0.00 | $0.00 |
| 26 | Construction Layout | 1 | Ls | $13,400.00 | 0% | $0.00 | 100% | $13,400.00 |
| 27 | Topography | 1 | Ls | $3,600.00 | 0% | $0.00 | 100% | $3,600.00 |
| 28 | 6" Pump Rental | Each | PD | $210.00 | 0.00 | $0.00 | 23.00 | $4,830.00 |
| 29 | Change Order #1 | 1 | L.S | $145,264.95 | 2.7540% | $4,000.60 | 83% | $121,166.84 |
| 30 | Change Order #3 | 1 | L.S. | $317,074.72 | 7.8166% | $24,784.50 | 63% | $199,739.50 |
| 31 | Change Order #4 | 1 | L.S. | $4,620.00 | 0.00 | $0.00 | 1.00 | $4,620.00 |
| 32 | Extra Work | 1 | L.S. | $6,495.00 | 0.00 | $0.00 | 1.00 | $6,495.00 |

TOTAL VALUE OF WORK COMPLETED TO DATE                          $29,425.09          $773,067.04

SUB TOTAL                                                     $29,425.09          $773,067.04

LESS    PREVIOUS ESTIMATES                                        $0.00          $743,641.94

**EXHIBIT 2**

CURRENT AMOUNT DUE THIS PAY ESTIMATE                          $29,425.09          $29,425.09



Owner:
    Leon Carmichael
    150 East Fleming Road
    Montgomery, Alabama  36105

REESE AND HOWELL, INC.

CONTRATOR:
    REESE & HOWELL, INC.
    101 MERIWETHER ROAD
    PIKE ROAD, ALABAMA  36064

| | |
|---|---|
| ESTIMATE #: | 8 |
| EST. DATE: | 06/26/03 |
| R&H JOB #: | 208 |
| DATE: | 07/28/03 |

Job:    Carmichael Center

| ITEM NO | ITEM DESCRIPTION | CONTRACT QUANTITY | UNIT | UNIT PRICE | QUANITY COMP. THIS ESTIMATE | TOTAL VALUE OF WORK THIS ESTIMATE | QUANITY COMP. TO DATE | TOTAL VALUE OF WORK TO DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | Mobilization | 1 | Ls | $6,000.00 | 0% | $0.00 | 100% | $6,000.00 |
| 2 | Stripping Topsoil (6" thick) | 9789 | Cy | $2.50 | 0 | $0.00 | 9789.00 | $24,472.50 |
| 3 | Stripping Wet Unclassified Excavation | 4982 | Cy | $2.50 | 0 | $0.00 | 4982.00 | $12,455.00 |
| 4 | 12" Undercut Front Parking Lot | 3005 | Cy | $2.50 | 0 | $0.00 | 3005.00 | $7,512.50 |
| 5 | 12" Replacement of Undercut | 3605 | Cy | $5.50 | 0 | $0.00 | 3605.00 | $19,827.50 |
| 6 | Unclassified Excavation | 9273 | Cy | $2.50 | 0 | $0.00 | 9273.00 | $23,182.50 |
| 7 | Borrow Excavation ( on site material ) | 12525 | Cy | $3.50 | 0 | $0.00 | 15525.00 | $54,337.50 |
| 8 | Subgrade Preparation | 38828 | Sy | $1.00 | 0 | $0.00 | 38828.00 | $38,828.00 |
| 9 | Clay Base (6") | 38238 | Sy | $3.25 | 0 | $0.00 | 38238.00 | $124,273.50 |
| 10 | Topsoil Respread | 2064 | Cy | $3.75 | 524 | $1,965.00 | 2064.00 | $7,740.00 |
| 11 | 24" Curb & Gutter | 2021 | Lf | $10.00 | 0 | $0.00 | 2021.00 | $20,210.00 |
| 12 | 6" Mountable Curb | 1678 | Lf | $5.50 | 45 | $247.50 | 1723.00 | $9,476.50 |
| 13 | 24" Rollback Curb | 63 | Lf | $11.00 | 0 | $0.00 | 63.00 | $693.00 |
| 14 | Handicap Ramps | 14 | Ea | $150.00 | 0 | $0.00 | 14.00 | $2,100.00 |
| 15 | 5' Wide Conc. Sidewalk | 253 | Sy | $20.00 | 0 | $0.00 | 253.00 | $5,060.00 |
| 16 | 6' Wide Conc. Sidewalk | 96 | Sy | $20.00 | 0.0 | $0.00 | 96.00 | $1,920.00 |
| 17 | 12' Wide Conc. Sidewalk | 198 | Sy | $20.00 | 0 | $0.00 | 198.00 | $3,960.00 |
| 18 | Concrete Paving | 1698 | Sy | $26.40 | 0 | $0.00 | 1698.00 | $44,827.20 |
| 19 | 1" 426A Plant Mix (wear surface) | 35631 | Sy | $1.79 | 0 | $0.00 | 0.00 | $0.00 |
| 20 | 2" 327A Plant Mix (light duty) | 29822 | Sy | $3.15 | 0 | $0.00 | 0.00 | $0.00 |
| 21 | 3" 327A Plant Mix (medium duty) | 5809 | Sy | $4.72 | 0 | $0.00 | 0.00 | $0.00 |
| 22 | Additional Mobilization (pavement) | 1 | Ls | $1,000.00 | 0% | $0.00 | 0% | $0.00 |
| 23 | 15" rcp class 3 | 264 | Lf | $25.00 | 0 | $0.00 | 264.00 | $6,600.00 |
| 24 | Slope Paved Headwall | 6 | Ea | $850.00 | 0 | $0.00 | 6.00 | $5,100.00 |
| 25 | Haybales | 20 | Ea | $7.00 | 0 | $0.00 | 0.00 | $0.00 |
| 26 | Construction Layout | 1 | Ls | $13,400.00 | 0% | $0.00 | 100% | $13,400.00 |
| 27 | Topography | 1 | Ls | $3,600.00 | 0% | $0.00 | 100% | $3,600.00 |
| 28 | 6" Pump Rental | Each | PD | $210.00 | 0 | $0.00 | 23.00 | $4,830.00 |
| 29 | Change Order #1 | 1 | L.S | $145,264.95 | 0.0000% | $0.00 | 81% | $117,166.2 |
| 30 | Change Order #2 | 1 | L.S. | $317,074.72 | 12.4831% | $39,580.66 | 55% | $174,955.0 |
| 31 | Change Order #3 | 1 | L.S. | $4,620.00 | 0.0 | $0.00 | 1.00 | $4,620.0 |
| 32 | Extra Work | 1 | L.S. | $6,495.00 | 1.0 | $6,495.00 | 1.00 | $6,495.0 |
| | | | | | | $48,288.16 | | $743,641.9 |

TOTAL VALUE OF WORK COMPLETED TO DATE

| | | |
|---|---|---|
| | $48,288.16 | $743,641.9 |
| SUB TOTAL | | |
| | $0.00 | $590,699.7 |
| LESS    PREVIOUS ESTIMATES | $104,654.03 | |
| PLUS    AMOUNT UNPAID PREVIOUS ESTIMATE | | |
| | $152,942.19 | $152,942.1 |
| CURRENT AMOUNT DUE THIS PAY ESTIMATE | | |

# EXHIBIT 3
# TO
# EXHIBIT A

STATE OF ALABAMA
MONTGOMERY COUNTY

## VERIFIED STATEMENT OF LIEN

Reese & Howell, Inc., files this statement in writing, verified by the oath of Pickett Reese, Vice President, who has personal knowledge of the facts set forth herein:

That Reese & Howell, Inc., claims a lien upon the following property, situated in Montgomery County, Alabama, to-wit:

**That property commonly known as The Carmichael Center, 150 East Fleming Road, Montgomery, Alabama, 36105**

That said lien is claimed, separately and severally, as to both the buildings and improvements thereon, and the said land.

That said lien is claimed to secure an indebtedness of $182,367.28, with interest thereon from October 1, 2003, for materials and for labor supplied for the excavation, grading, stripping, curb and gutter, sidewalk, and other site preparation work on the property known as the Carmichael Center.

The name of the owner of said property is Leon Carmichael.

[THIS SPACE LEFT BLANK INTENTIONALLY]

134596.1

**EXHIBIT 3**

Dated this 19th day of November, 2003

REESE & HOWELL, INC.

BY: Pickett Reese
its: Vice President

STATE OF ALABAMA         ]

COUNTY OF MONTGOMERY     ]

      I, the undersigned authority, in and for said County and State, hereby certify that

Pickett Reese, whose name as Vice President of REESE & HOWELL, LLC, is signed to

the foregoing Statement of Lien, and who is known to me, acknowledged before me on this

day that, being informed of the contents of said instrument, he, as such

and with full authority, executed the same voluntarily on the day the same bears date, for

and on behalf of said corporation.

      GIVEN under my hand and seal on this 19th day of November, 2003.

Notary Public

[SEAL]

My Commission Expires: _12/05/05_

This instrument Prepared by:
Paul A. Clark, Esq.
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, Alabama 36101

138596.1

STATE OF ALABAMA
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON

2003 NOV 20 AM 8:19

REESE McKINNEY, JR.
JUDGE OF PROBATE

INDEX ---------- 0.50
INDEX      5.00
RECORD FEE   1.00
RECORD FEE   5.00
CASH       11.00

11-20-2003 #1     ITEM   3
             1CL    8441 09:17TH

# EXHIBIT B

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

SHERMAN INDUSTRIES, INC.      )
         )
         Plaintiff,          )
         )
v.          )
         )    CIVIL ACTION NO. CV-03-2988
REESE & HOWELL, INC., et al.,      )
         )
         Defendants.       )
         )
         )

### ANSWER AND COUNTER-CLAIM

Defendants Reese & Howell, Inc. ("R&H"), Pickett R. Reese ("Reese"), and Frank E. Howell, Jr. ("Howell") (collectively referred to as "these Defendants") respond to the Complaint filed by Sherman Industries, Inc. ("Sherman") as follows:

### ALLEGATIONS OF THE COMPLAINT

As to the specifically numbered paragraphs of Plaintiff's Complaint, these Defendants aver as follows:

1. These Defendants lack sufficient information or knowledge as to the truth or falsity of the allegations in Paragraph 1, therefore these Defendants deny the allegations of Paragraph 1.

2-5. These Defendants admit the allegations of Paragraphs 2-5.

### COUNT ONE

6. These Defendants deny the allegations of Paragraph 6.

### COUNT TWO

7. These Defendants re-allege all prior paragraphs of this Answer as if set out here in full.

140026.1

8.    These Defendants deny the allegations of Paragraph 8.

## COUNT THREE

9.    These Defendants re-allege all prior paragraphs of this Answer as if set out here in full.

10.    These Defendants deny the allegations of Paragraph 10.

11.    These Defendants deny the allegations of Paragraph 11.

## COUNT FOUR

12.    These Defendants re-allege all prior paragraphs of this Answer as if set out here in full.

13.    These Defendants deny the allegations of Paragraph 13.

14.    These Defendants deny the allegations of Paragraph 14.

## COUNT FIVE

15.    These Defendants re-allege all prior paragraphs of this Answer as if set out here in full.

16.    These Defendants admit that Leon Carmichael, Sr. is the professed owner of the property commonly known as The Carmichael Center which is located at 150 E. Fleming Road, Montgomery, Alabama. These Defendants lack sufficient information or knowledge as to the truth or falsity of the remaining allegations in Paragraph 16, therefore these Defendants deny the remaining allegations of Paragraph 16.

17.    These Defendants admit the allegations of Paragraph 17.

18.    These Defendants lack sufficient information or knowledge as to the truth or falsity of the allegations in Paragraph 18, therefore these Defendants deny the allegations of Paragraph 18.

19.     These Defendants lack sufficient information or knowledge as to the truth or falsity of the allegations in Paragraph 19, therefore these Defendants deny the allegations of Paragraph 19.

20.     These Defendants deny the allegations contained in the un-numbered "wherefore" paragraphs following Paragraphs 8, 11, 14, 19, and further deny the Plaintiff is entitled to any of the relief sought therein.

## SECOND DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted, in whole or in part.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or unclean hands.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by principles related to its failure to mitigate damages.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because these Defendants are not liable to Plaintiff under any theory.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by ratification, consent, acquiescence, and/or release.

140026.1                                3

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Plaintiff failed to give notice to these Defendants.

## NINTH DEFENSE

Attorney's fees are not recoverable based on the particular facts of this case.

## TENTH DEFENSE

These Defendants deny each and every material allegation of the Complaint which is not specifically admitted herein and demands strict proof thereof.

## CROSS-CLAIM

Pursuant to *Ala. R. Civ. P.* 13, Defendant Reese & Howell, Inc. ("R&H") asserts the following Cross-claim against Co-Defendant Leon Carmichael, Sr. ("Carmichael"):

1.      Cross-claimant R&H is an Alabama corporation with its principal place of business in Montgomery County, Alabama.

2.      Cross-claim Defendant Carmichael is a resident of Montgomery County, Alabama and is above the age of nineteen (19) years.

3.      This Court has jurisdiction over this matter and venue is proper.

## CROSS-CLAIM FACTS

5.      On or about, R&H entered into a contract agreement with Carmichael to perform work and labor on the property commonly known as The Carmichael Center which is located at 150 E. Fleming Road, Montgomery, Alabama.   A copy of the contract between R&H and Carmichael is attached hereto as Exhibit "A".

6.      R&H did work and labor for Carmichael at his request.

7.    Defendant Carmichael was billed for unpaid services rendered by R&H. The total amount owed for R&H's services was $182,367.28. Carmichael has failed to make payment in this amount to R&H. Copies of the invoices for unpaid labor are attached as Exhibit "B".

8.    Carmichael is the owner of the property upon which this suit is based.

## COUNT I

9.    R&H realleges and reasserts each and every paragraph set forth above as if fully set out herein.

10.    Carmichael owes R&H the sum of $182,367.28 due by account stated.

WHEREFORE, R&H demands judgment against Leon Carmichael, Sr. in the amount of $ 182,367.28, plus interest, costs, and attorneys fees.

## COUNT II

11.    R&H realleges and reasserts each and every paragraph set forth above as if fully set out herein.

12.    Carmichael owes R&H the sum of $182,367.28 due by breach of contract.

WHEREFORE, R&H demands judgment against Leon Carmichael, Sr. in the amount of $182,367.28, plus interest, costs, and attorneys fees.

## COUNT III

13.    R&H realleges and reasserts each and every paragraph set forth above as if fully set out herein.

14.    Cross-claim Defendant Carmichael is the owner of the property commonly known as The Carmichael Center located and situated at 150 E. Fleming Road, Montgomery, Alabama.

15.    R&H furnished certain building materials and supplies for the improvement of the above-described real property owned by Carmichael.

140026.1

5

16.    The above-described property was substantially enhanced in value by virtue of the materials and supplies.

17.    Plaintiff avers that it caused to be filed in the Office of the Judge of Probate of Montgomery County, Alabama, on November 19, 2003, a verified statement of lien which is recorded in Real Property Book 2780 Page 14, wherein the R&H claims a mechanic's lien against the above-described real property, buildings and improvements.  A copy of the verified statement of lien is attached as Exhibit "C" and is incorporated by reference as if set out here in full.

18.    R&H avers that Carmichael owes R&H the sum of $182,367.28 by virtue of the materials, supplies and labor referenced above.    Despite R&H's demand for payment, Carmichael has failed to pay the amount due and owed.

WHEREFORE, R&H prays that Carmichael be made a party to this counterclaim, that he be served with a copy of the counterclaim, that he be required to plead or answer to same within the time required by law; or else suffer default judgment to be issued against him.  Plaintiff further prays that upon a final hearing of this cause, the Court will make and enter an Order of Judgment as follows:

A.    That a money judgment be entered in favor of R&H and against Carmichael in the amount of $182,367.28, plus interest and costs;

B.    That a mechanic's lien be fixed and established on the real property described above, together with the buildings and improvements, in favor of the R&H, in the amount of the money judgment, and that said property be ordered sold in satisfaction of the lien;

C.    For a judgment for any such further, different, and general relief to which R&H may be entitled

Respectfully submitted this 5th day of January 2004.

_____

One of the Attorneys for Defendants
Reese & Howell, Inc., Pickett Reese, and
Frank Howell

**OF COUNSEL:**

W. Joseph McCorkle, Jr. (MCC056)
Paul A. Clark (CLA076)
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by United States Mail, properly addressed and postage prepaid, on this the 5th day of January 2004:

Greggory M. Deitsch, Esq.
Sirote & Permutt, P.C.
2222 Arlington Avenue South
P.O. Box 55727
Birmingham, AL  35255

J. Knox Argo, Esq.
J. Knox Argo, P.C.
6706 Taylor Circle
Montgomery, AL  36117

_____

Of Counsel

140026.1

7

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:03cr259-T |
| | ) | |
| LEON CARMICHAEL, SR., | ) | |
| also known as BEAVER LEON | ) | |
| CARMICHAEL | ) | |

UNITED STATES OF AMERICA'S BRIEF REGARDING
REESE & HOWELL, INC.'S PETITION TO VALIDATE
THIRD PARTY INTEREST

Comes now the United States of America (United States), by and through Leura G. Canary, United States Attorney, and John T. Harmon, Assistant United States Attorney, and respectfully states as follows:

I. BACKGROUND.

On or about August 15, 2005, the Court entered the Second Preliminary Order of Forfeiture in this case.  Pursuant to that Order, notice was given to individuals and entities who might have an interest in the property therein described.  Additionally, notice of this forfeiture was published in accordance with law and order.

On or about September 13, 2005, Reese & Howell, Inc. timely filed its Petitioner's Claim of Interest in Property Subject to Second Preliminary Order of Forfeiture.  On or about November 4, 2005, the United States filed its response to Reese & Howell, Inc.'s Petitioner's Claim of Interest in Property Subject to Second Preliminary Order of Forfeiture and denied that the Second

Exhibit E

Preliminary Order of Forfeiture should be amended to reflect Reese and Howell's alleged interest in the real property at issue.

On or about November 17, 2005, Reese & Howell, Inc. filed their response to the United States' response filed on November 4, 2005.

## II.  DISCUSSION OF ISSUES.

A.  <u>Sufficiency of Description of Property Found in Reese & Howell, Inc.'s Verified Materialman's Lien</u>.

The United States does not contest that the description as found in the verified lien was sufficient under the law and withdraws this contention.

B.  <u>The Interest Of The United States In The Real Property Described In The Second Preliminary Order Of Forfeiture Is Superior To The Interest (If Any) Of Reese & Howell, Inc. In The Same</u>.

1.  <u>Citations of Authority</u>.

....federal law decides what interests are subject to forfeiture under Section 853, state property law defines what those interest are in the first place.

cites omitted.

<u>U.S. v. Kennedy</u>, 201 F.3d 1324, 1334 (11th Cir. 2000).

Accordingly, we must look to the applicable federal law to determine what interests are subject to forfeiture under Title 21, United States Code, Section 853, the Code section affording forfeiture in the present case.

Title 21, United States Code, Section 853(a)(1) and (2) provide:

> (a) Property subject to criminal forfeiture
>
> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law–
>
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

Both of these grounds were alleged for forfeiture in the indictment in this case, and evidence was presented both that drug proceeds were used to construct the property described in the Second Preliminary Order of Forfeiture (hereinafter the "Carmichael Center") and that the Carmichael Center was used and was intended to be used to commit and to facilitate the commission of the drug felony charged.

3

Title 21, United States Code, Section 853(c) holds:

(c) Third party transfers

All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Title 21, United States Code, Section 853(n)(6)(A) and (B) state:

(n) Third party interests

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right,

4

> title, or interest in the property
> and was at the time of purchase
> reasonably without cause to believe
> that the property was subject to
> forfeiture under this section;
>
> the court shall amend the order of
> forfeiture in accordance with its
> determination.

The United States' interest relates back to the time of the act that made the property subject to forfeiture. A third party which objects to application of the relation back doctrine must file a claim in the ancillary proceeding. U.S. v. Gilbert, 244 F.3d 888, 902 n.38 (11th Cir. 2001).

Under federal law, Reese and Howell, Inc. must show that they had a superior right in the property at the time of the acts which gave rise to forfeiture, or that they were a bona fide purchaser for value without reason to know of the Carmichael Center's illegal use.

> Thus, subsection (n)(6) protects only two
> classes of petitioners, those whose legal
> interests in the property were superior to the
> defendant [] at the time the interest of the
> United States vested through the commission of
> an act giving rise to forfeiture and "bona
> fide purchasers for value" without knowledge
> of the forfeitability of the defendant's
> assets. Cites omitted.

5

<u>Kennedy</u>, 201 F.3d at 1328-1329.

Unsecured creditors cannot be bona fide purchasers for value under Title 21, United States Code, Section 853(n)(6)(B). <u>U.S. v. Watkins</u>, 320 F.3d 1279, 1283-1284 (11th Cir. 2003). "... a general creditor has no vested or superior interest in particular assets forfeited unless he not only has secured a judgment against the debtor, but has also perfected a lien against a particular item." <u>U.S. v. McCorkle</u>, 143 F.Supp.2d 1311, 1319-1320 (M.D. Fla 2001).

To determine Reese & Howell, Inc.'s interest, if any, in the Carmichael Center, one must look to state law. Reese & Howell, Inc. base their assertion of any interest on a mechanic's and materialman's lien. The general provisions of the Alabama law providing for liens may be found at Ala. Code §§ 35-11-1, <u>et seq</u>. (1975). Ala. Code §§ 35-11-210, <u>et seq</u>. (1975) deal specifically with materialman's liens. Because materialman's liens are created by statute, the requirements thereof are strictly enforced-particularly the procedural and notice requirements. <u>Hartford Acc. & Indem. Co. v. American Country Clubs, Inc.</u>, 353 So.2d 1147 (Ala. 1977). Alabama Courts will not recognize an equitable lien when the statutory procedures are available. <u>Covington County Bank v. R. J. Allen & Associates, Inc.</u>, 462 F.Supp. 413 (M.D. Ala. 1977).

Contractors with the land owner asserting a materialman's lien must first file a verified statement in the applicable probate

6

court. (The United States does not dispute that Reese & Howell, Inc. has done this).

The contractor must then file suit to enforce the lien within six months after maturity of the debt. See Ala. Code § 35-11-221 (1975). (The United States does not dispute that Reese & Howell, Inc. filed a counter-claim seeking to enforce the alleged lien within six months of the maturity of the debt.).

Finally, the contractor must establish liability for the debt for which the lien is claimed and must obtain a money judgment against the debtor. Ex Parte Grubbs, 571 So.2d 1119 (Ala. 1990). A lien filed pursuant to a materialman's lien statute remains inchoate and loses all force and vitality unless an action is brought and prosecuted to final judgment. Lily Flagg Bldg. Supply Co. v. J.M. Medlin & Co., 285 Ala. 402, 232 So.2d 643 (1970).

A lien claimant may, at his option, join all parties having an interest in the subject property to the suit to enforce the lien. Any such parties not so joined are not bound by the judgment or proceedings therein. Ala. Code § 35-11-223 (1975). See also Birmingham Lumber & Bldg. Materials, Inc. v. Lovejoy, 705 So.2d 440 (Ala.Civ.App. 1997).

2.    Factual Assertions.

The indictment in this case alleges that Leon Carmichael, Sr. was involved in a drug conspiracy from 1993 until November 17, 2003 and that the Carmichael Center was both used, in any manner or part, to commit and to facilitate the commission of this drug conspiracy; and further alleges that the Carmichael Center represents the proceeds of this same drug conspiracy.

The United States recorded its lis pendens, giving notice of this forfeiture action on December 19, 2003. See also joint stipulation of facts filed December 1, 2005.

3.    Argument.

a.    Interest Prior to Illegal Use of Carmichael Center.

Reese & Howell, Inc. must establish that they had a right or interest in the Carmichael Center superior to that of the United States prior to its illegal use.  The United States, by reason of its indictment, the guilty verdict and the joint stipulation of facts has established that its right was vested as of 2001.  Reese & Howell, Inc. did not begin to furnish materials to the Carmichael Center until November 2002.  Their right in the Carmichael Center could not have been superior to the defendant, Leon Carmichael, Sr., at the time the United States' interest vested by reason of the illegal acts giving rise to forfeiture. See Kennedy, 201 F.3d at 1328-1329.

8

Even if Reese & Howell, Inc. had begun to furnish materials prior to the illegal acts, their interest would not have been established prior to that of the United States, because they did not even file their notice of lien until November 19, 2003, two days after the drug conspiracy which supports this forfeiture ended.   The recording of the notice of lien is the absolute earliest date that any such lien, should one exist, could be established. Beyond that, their alleged materialman's lien is an inchoate interest because they have not perfected their lien by obtaining a judgment.  Even had they obtained a judgment, Reese & Howell, Inc.'s interest would still be inferior to that of the United States because it could not predate the relation back transfer in 2001 or even the end of the drug conspiracy.

Finally, even if Reese & Howell, Inc. had gained an interest in the property prior to its illegal use, had recorded their notice of lien prior to the illegal use and obtained their civil judgment, their interest would still be inferior to that of the United States because they did not include the United States as a party in their civil suit to perfect their lien.  Reese & Howell, Inc. had notice of the United States' interest by reason of its lis pendens filed before they made their counter-claim.  Because they chose not to include the United States in this action, the United States is not bound by it.  Birmingham Lumber & Bldg. Materials, Inc. v. Lovejoy, 705 So.2d at 442.

9

b.    <u>Bona Fide Purchaser for Value</u>.[1]

The United States does not contest that Reese & Howell, Inc. provided value as an unsecured creditor of Leon Carmichael, Sr.    The United States does assert that, as an unsecured creditor, Reese & Howell, Inc. cannot be bona fide purchasers. <u>See</u> <u>U.S. v. Watkins</u>, 320 F.3d at 1283-1284. Because they had not secured their judgment or perfected their lien, Reese & Howell, Inc. are general unsecured creditors of Leon Carmichael, Sr. with no specific interest in the Carmichael Center. <u>See</u> <u>U.S. v. McCorkle</u>, 143 F.Supp.2d at 1319-1320.

c.    <u>Conclusion</u>.

Reese & Howell's position that the United States is not an owner but is merely an "encumbrance" of the property is incorrect.    The cited cases, law and order of forfeiture show that the United States is the owner of the Carmichael Center, subject only to the interests of those third parties who can avail themselves of the provisions of Title 21, United States Code, Section 853(n)(6) and that this ownership relates back to the illegal use of the Carmichael Center, no later than 2001. Reese & Howell, Inc. cannot assert any provision of Section 853(n)(6) and therefor cannot defeat the relation back of the United States' interest to 2001.

---

[1]The United States does not assert that Reese & Howell, Inc. had notice of Leon Carmichael's illegal activities.

Reese & Howell, Inc. are, at best, unsecured creditors of the defendant. Their interest, if any, is inchoate and without authority and is inferior to that of the United States. Their petition should be denied.

Respectfully submitted this 15th day of December, 2005.


FOR THE UNITED STATES ATTORNEY
LEURA G. CANARY


/s/John T. Harmon
John T. Harmon
Assistant United States Attorney
Office of the United States Attorney
Middle District of Alabama
One Court Square, Suite 201 (36104)
Post Office Box 197
Montgomery, Alabama 36101-0197
Telephone: (334) 223-7280
Facsimile: (334) 223-7560
E-mail: John.Harmon@usdoj.gov
Bar Number: 7068-II58J

CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2005, I electronically filed the foregoing Brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Lisa Monet Wayne, Ronald Ray Brunson, Marion D. Chartoff, Susan G. James, Barry E. Teague, A. Clark Morris, Terry F. Moorer, Stephen P. Feaga, Frederick Enslen, Jr., Brian R. Walding** and **Paul Clark.**

/s/John T. Harmon
John T. Harmon
Assistant United States Attorney
Office of the United States Attorney
Middle District of Alabama
One Court Square, Suite 201 (36104)
Post Office Box 197
Montgomery, Alabama 36101-0197
Telephone:(334) 223-7280
Facsimile:(334) 223-7560
E-mail: John.Harmon@usdoj.gov
Bar Number: 7068-II58J

12

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:03cr259-MHT |
| LEON CARMICHAEL, SR. | ) | (WO) |


### OPINION

Defendant Leon Carmichael, Sr. was convicted of conspiring to distribute marijuana and conspiring to commit money laundering. This criminal case is again before the court, this time on petitioner Reese & Howell, Inc. ("R & H")'s petition, filed pursuant to 21 U.S.C. § 853(n), to validate its alleged third-party interest in the real property known as the Carmichael Center. For the reasons that follow, R & H's petition will be denied.

Exhibit F

### I. BACKGROUND

In their stipulation of facts[1], the parties agree on the following time line of relevant events:

November 22, 2002:  R & H, a construction company, and Carmichael signed a contract according to which R & H agreed to provide materials and labor to improve the property known as the Carmichael Center.

November 2002 through October 2003:  R & H provided materials and labor for which Carmichael was billed $ 182,367.28.  Carmichael never paid for these materials and labor.

November 19, 2003:  R & H filed a materialman's lien against the Carmichael Center.  The lien was duly executed and recorded.  On the same day, Carmichael was indicted by a federal grand jury on a count of conspiracy to possess with intent to distribute marijuana "from a date unknown to the Grand Jury, but

_____

1.  The parties agreed to the submission of this matter to the court on their stipulation of facts (Doc. No. 609), rather than through an evidentiary hearing.

2

continuing up to on or about the 17th day of November, 2003." The indictment included a forfeiture allegation implicating the Carmichael Center, among other properties.

December 19, 2003: The United States filed a lis pendens in the probate court of Montgomery County giving notice of its forfeiture action against the Carmichael Center.

January 6, 2004: R & H filed a civil action against Carmichael in state court, asserting various causes of action including breach of contract, and seeking to enforce the materialman's lien. The United States has never been made a party to this state-court action, which remains pending in state court.

August 17, 2004: A federal grand jury returned a superceding indictment against Carmichael on two counts, one a conspiracy to launder money and the other a conspiracy to possess with intent to distribute more than 3,000 kilograms of marijuana "from in or about 1993

3

... up to on or about the 17th day of November, 2003."
The original forfeiture allegation was repeated in this
indictment.

June 17, 2005: Carmichael was convicted by a jury
on both counts of the superceding indictment. Evidence
produced during trial established that the Carmichael
Center property was used as early as 2001 to receive and
store some portion of the marijuana for which Carmichael
kiwas found accountable, and as a delivery point for
drug proceeds.

August 15, 2005: This court preliminarily ordered
Carmichael to forfeit the Carmichael Center to the
United States pursuant to 21 U.S.C. § 853.

September 13, 2005: R & H timely filed its petition
seeking adjudication of its interest in the property
pursuant to § 853.[2]

---

2. Although the parties refer to R & H's petition as
a petition for validation of third-party interest, the
petition is actually styled as "Petitioner's claim of
interest in property subject to second preliminary order
                                        (continued...)

4

## II. LEGAL STANDARD

21 U.S.C. § 853(n) governs third-party interests affected by the forfeiture of property in a criminal proceeding. The third-party petitioner bears the burden of proof to establish by a preponderance of the evidence that it has a legal interest in the property that renders the order of forfeiture invalid in whole or in part. Under the statute, such legal interest may come about in two ways: either, according to subsection A of § 853(n)(6), the petitioner must show that it had a superior interest in the property at the time of the acts giving rise to forfeiture or, according to subsection B of § 853(n)(6), it must show that it was a bona fide purchaser for value without reason to know that the property was subject to forfeiture.[3]

---

2.   (...continued)
of forfeiture."

3.   21 U.S.C. § 853(n)(6) reads:

(continued...)

5

21 U.S.C. § 853(c) contains a 'relation back' provision under which "all right, title, and interest in the [forfeited] property ... vests in the United States

_____

3.   (...continued)
      "If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--

      (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

      (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonable without cause to believe that the property was subject to forfeiture under this section;

      the court shall amend the order of forfeiture in accordance with its determination."

6

upon the commission of the act giving rise to forfeiture." Finally, "federal law decides what interests are subject to forfeiture under section 853 [and] state property law defines what those interests are in the first instance." United States v. Kennedy, 201 F.3d 1324, 1334 (11th Cir. 2000).

## III. DISCUSSION

R & H's claim arises under subsection A of 21 U.S.C. § 853(n)(6); R & H alleges that its interest in the Carmichael Center was superior to that of Carmichael at the time the interest of the United States vested through the commission of the acts giving rise to forfeiture. R & H's interest takes the form of a materialman's lien which, when perfected, is a legally enforceable interest in real property. 1975 Ala. Code § 35-11-226.

Under Alabama law, a materialman's lien can be perfected only through compliance with three essential

7

steps: (1) provision of statutory notice to the owner of the property; (2) filing of a verified statement of lien in the probate office of the county where the improvement is located; and (3) filing of a suit to enforce the lien. <u>Bailey Mortgage Co. v. Gobble-Fite Lumber Co.</u>, 565 So. 2d 138, 141 (Ala. 1990). It is not disputed that R & H complied with these steps within the relevant statutory time periods.

Once these steps are taken, "the lien relates back to the date that the materials or labor was provided." <u>Metro Bank v. Henderson's Builders Supply Co.</u>, 613 So. 2d 339, 340 (Ala. 1993). Therefore, assuming that R & H holds a perfected materialman's lien, that lien relates back to November 2002, when R & H first began delivering materials used in construction of the Carmichael Center.[4]

---

4. The government does not agree that R & H's materialman's lien has been perfected, and argues that, despite <u>Metro Bank</u>'s language, the lien remains inchoate until the suit to enforce it in state court is prosecuted (continued...)

8

R & H devotes much of its argument to pointing out that, under § 853(n)(6)(A), the relevant inquiry is whether its interest in the property was superior to that of Carmichael, and not whether its interest was superior to that of the United States, as the government repeatedly asserts in its briefs. This is true but irrelevant to the case.

The statute does not simply require the court to adjudicate the status of property interests in the

-------------------

4.  (...continued)
to final judgment. Moreover, the government argues that any party not joined in that suit is not bound by the final judgment. The court does not need to reach these questions because, as will be shown, R & H's interest in the Carmichael Center was not superior to Carmichael's at the time of the criminal activity even assuming, as the court does, that the materialman's lien has been perfected.

In the government's original response to R & H's petition (Doc. No. 579), it also argued that the property description in R & H's lien statement was insufficient under state law, therefore rendering the lien ineffective against the government's interest in the Carmichael Center. The government does not now contest the validity of the property description in R & H's lien. See United States of America's brief regarding R & H's petition to validate third party interest (Doc. No. 619), p. 2.

9

abstract; rather, it specifies that the court must determine the status of the asserted property interests as those interests existed "at the time of the commission of the acts which gave rise to the forfeiture of the property." R & H correctly points out that its lien attached against the property prior to the end of the period of criminal activity charged in the indictment, meaning that R & H's interest predates at least a portion of the criminal acts giving rise to forfeiture. But the evidence produced at trial showed that the Carmichael Center was used as early as 2001 in connection with the criminal activity for which Carmichael was indicted and convicted. Because R & H's lien, if valid, relates back only to November 2002, when R & H first began supplying materials and labor, R & H had no interest whatsoever in the Carmichael Center at the time of the beginning of the illegal use in 2001. Therefore, R & H's interest, at that time, was by definition not superior to that of Carmichael.

10

Had the illegal use ended before R & H's provision of materials and labor in 2002, there could be no dispute that the United States would be entitled to the property, since R & H would have had no interest superior to Carmichael's at the time of the illegal acts in 2001, and the United States' own interest vests "upon the commission" of the illegal acts.     21 U.S.C. § 853(c).     R & H does not attempt to explain why the criminal activity that occurred after it gained an interest in the property should somehow erase the legal effects of the criminal activity that occurred before its interest attached.     The continuing nature of the illegal activity in this case does not back-date R & H's interest to a time prior to 2001, when that activity began.

## IV. CONCLUSION

Because R & H had no vested or superior interest in the Carmichael Center at the time the acts giving rise

11

to forfeiture of the property began, R & H cannot meet its burden under 21 U.S.C. § 853(n).[5]

An appropriate judgment denying R & H's petition will be entered.

DONE, this the 14th day of March, 2006.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

_____

5. This court's adjudication of R & H's interest in the Carmichael Center under 21 U.S.C. § 853 does not, of course, in any way impact R & H's other claims, including breach of contract, currently pending in state court.

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA    )
                            )
        v.                  )    CRIMINAL ACTION NO.
                            )      2:03cr259-MHT
LEON CARMICHAEL, SR.        )          (WO)


### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that petitioner Reese & Howell, Inc.'s petition for validation of third party interest (Doc. No. 535) is denied.

The clerk of the court is DIRECTED to enter this document on the criminal docket as a final judgment.

DONE, this the 14th day of March, 2006.


                          /s/ Myron H. Thompson
                        UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CR. NO. 2:03-cr-259-T** |
| **LEON CARMICHAEL, SR.,** | ) | |
| **also known as BEAVER LEON** | ) | |
| **CARMICHAEL** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PETITIONER REESE & HOWELL, INC.'S MOTION TO ALTER, AMEND OR VACATE JUDGMENT AND MEMORANDUM BRIEF IN SUPPORT

Reese & Howell, Inc. ("R&H") moves the Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter, amend or vacate the judgment entered against R&H on March 14, 2006 in relation to R&H's petition to validate its third-party interest in the forfeiture proceeding pending in the above-referenced matter.[1]  In support of this Motion, R&H avers as follows:

### Procedural History

Leon Carmichael, Sr. ("Carmichael") was indicted by a United States Grand Jury on November 19, 2003 on the following charges:

> That from a date unknown to the Grand Jury, but continuing up to on or about the 17th day of November 2003, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendants...did knowingly and intentionally conspire, combine and agree with each other...to possess with intent to distribute 100 kilograms or more grams of marijuana, the exact amount being unknown to the Grand Jury...in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

---

[1] Although originally styled "Petitioner's Claim of Interest in Property Subject to Second Preliminary Order of Forfeiture," this document is referred to herein as "R&H's petition."

Exhibit G

(See Stipulation of Facts Material to Petition to Validate Third-Party Interest of Reese &
Howell ("Stip. of Facts"), filed December 1, 2005, at ¶ 7.)

At the time of the indictment, R&H held a duly executed and recorded
materialman's lien against property owned by Carmichael, commonly known as the
Carmichael Center, for unpaid materials and labor provided by R&H beginning in
November of 2002. (See Stip. of Facts at ¶¶ 1-6.)

The United States filed a *lis pendens* in the Probate Court of Montgomery County,
Alabama on December 19, 2003 giving notice of the assertion of its forfeiture interest,
pursuant to 21 U.S.C. 846, *et seq.*, against the Carmichael Center property. (Id. at ¶ 8.)
A superseding indictment was returned against Carmichael by a United States Grand Jury
on August 17, 2004. (Id. at ¶ 12.) The superseding indictment contains, in relevant part,
the following charges:

> That from in or about 1993, a more specific date being unknown to
> the Grand Jury, but continuing up to on or about the 17th day of
> November, 2003, in Montgomery County, within the Middle District of
> Alabama and elsewhere, the defendants. . .did knowingly and intentionally
> conspire...to possess with intent to distribute more than 3,000 kilograms
> of marijuana. . .in violation of Title 21, United States Code, Section
> 841(a)(1). . . .

(Id.)

On June 17, 2005, Carmichael was convicted by jury verdict on Count I and
Count II of the superseding indictment and was found "accountable" for 7,000 pounds of
marijuana. (Id. at ¶ 13.) The evidence produced during the trial of Carmichael
established that the Carmichael Center property was used as early as 2001 to receive
and/or store some portion of the marijuana for which Carmichael was found accountable
and as a delivery point for drug proceeds. (Id. at ¶ 14.)

2

Following Carmichael's conviction, two forfeiture orders were entered by this Court on August 1 and August 16, 2005, respectively. These orders provided for the forfeiture of the Carmichael Center to the United States and allowed the United States to sell the property in satisfaction of the United States' $1,000,000 forfeiture interest. On September 13, 2005, R&H timely filed a petition "pursuant to Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n) and this Court's orders of forfeiture...," which requested the Court to adjudicate R&H's rights in the Carmichael Center property and to order that R&H's materialman's lien be satisfied from the proceeds of the Carmichael Center sale. (See R&H's petition at p. 1.)

The United States objected to R&H's petition, asserting that R&H either did not hold a valid materialman's lien or that R&H's materialman's lien interest was not properly perfected and, therefore, failed to create an interest which could be validated under § 853(n). (See generally, Response to Show Cause Order Regarding [R&H's] Petition to Validate Third Party Interest, filed November 4, 2005; and United States of America's Brief Regarding [R&H's] Petition to Validate Third Party Interest ("United States' Brief"), filed December 15, 2005.) By agreement of the parties, R&H's petition was submitted for consideration by the Court, without a hearing, upon the submission of opposing briefs by R&H and the United States.

The Court issued its Opinion denying R&H's petition on March 14, 2006 ("Opinion"). While specifically declining to rule upon the validity of R&H's materialman's lien, the Court agreed that, assuming R&H's lien to be perfected, R&H's interest in the Carmichael Center was vested at the time of the commission of a portion of the acts for which Carmichael was convicted. (Opinion at p. 8-10.) The Court, however,

3

denied R&H's petition based on its finding that R&H could not show that its interest in the Carmichael Center was vested on the date upon which Carmichael began using the Carmichael Center in the commission of the acts for which he was convicted. (Opinion at p. 10-11.)

Judgment was entered against R&H, pursuant to the Court's Opinion, on March 14, 2006 ("judgment"). Subsequently, R&H timely filed this motion to alter, amend or vacate the judgment.

### **Standard for Relief**

Federal Rule of Civil Procedure 59(e) allows the filing of a motion to alter, amend or vacate a final judgment after its entry. Rule 59(e) does not set forth any specific standard for relief; rather, it leaves the decision to grant relief within the sound discretion of the trial court. Taylor v. First North American National Bank, 331 F. Supp. 2d 1354, 1355 (M.D. Ala. 2004). There are several generally accepted grounds for granting relief under Rule 59(e): (1) manifest errors of law or fact form the basis of the judgment; (2) new evidence is discovered or previously unavailable evidence is obtained; (3) the judgment creates manifest injustice; and (4) a change in the controlling law occurs. See id.

R&H is entitled to relief from the judgment entered against it pursuant to Rule 59(e) because the judgment is based upon a manifest error of law and because it creates a manifest injustice.

**Argument**

I.    **The Judgment Should be Altered, Amended or Vacated Because the Refusal to Validate R&H's Third-Party Interest Under 21 U.S.C. § 853(n)(6)(B) was a Manifest Error of Law.**

R&H's Rule 59(e) motion should be granted because the judgment is based upon a manifest error of law. Specifically, the Court erred in declining to rule on the validity of R&H's materialman's lien because the finding of a perfected lien interest would require the validation of R&H's interest in the forfeited property as a "bona fide purchaser for value" under § 853(n)(6)(B) regardless of when the interest arose.

Section 853(n)(6)(B) provides that a preliminary order of forfeiture shall be amended to reflect the rights of "a bona fide purchaser for value of the right, title or interest of the property and was at the time of the purchase reasonabl[y] without cause to believe that the property was subject to forfeiture." R&H's petition invoked all of the protections of § 853(n), which would include the protections provided to "bona fide purchasers for value" under subsection (B). (See R&H's petition at p. 1.) The Court's Opinion, however, did not address whether R&H qualified as a bona fide purchaser under subsection (B). Rather, the Court found that R&H could not participate in the forfeiture proceeds on the grounds that R&H's interest arose after the first date upon which the Carmichael Center was used for illicit purposes. (Opinion at p. 8-11.) Because R&H is indeed a "bona fide purchaser for value" of an interest in the forfeited property, the Court's failure to consider § 853(n)(6)(B) was a manifest error of law as: (1) it frustrated Congress' express intent to protect innocent parties who obtain a "right, title, or interest" in the forfeited property in exchange for valuable consideration; and (2) the accrual of

R&H's interest as a bona fide purchaser in relation to the date upon which the criminal

activity began is immaterial.[2]

**A.    The Court's Opinion frustrates Congress' intent to protect innocent third parties whose interests in forfeited property were obtained for value in arms'-length transactions.**

The provisions of 21 U.S.C. § 853 were enacted as part of the Comprehensive

Forfeiture Act of 1984.[3]  In United States v. Nichols, 841 F.2d 1485, 1486-89 (10th Cir.

1988), the Tenth Circuit discussed the legislative history of the present version of § 853

at length.  According to the Nichols Court, Congress was concerned that criminals were

avoiding the effects of the then-current forfeiture statutes by transferring their property

interests to collusive third-parties before a conviction could be obtained.  See id.  In

response, Congress added a "relation-back" provision to the forfeiture statutes which

---

[2]  In response to R&H's petition, the United States repeatedly argued that R&H failed to properly perfect its materialman's lien.  R&H's replied by rebutting the specific arguments raised by the United States.  The United States' only attack on R&H's status as a "bona fide purchaser" came in the United States' Brief at p. 10, and was limited to an assertion that, in light of its allegedly unperfected lien, R&H was merely an unsecured creditor and, thus, not a "bona fide purchaser."  In its Brief, R&H countered this attack by demonstrating that its lien was perfected, but did not specifically discuss the effect of perfection on R&H's status as a bona fide purchaser.  Therefore, the United States may assert that the arguments contained in this motion should not be considered as they are "new arguments" and cannot be raised for the first time in a Rule 59(e) motion.  These are not new arguments because they are encompassed within R&H's assertion of all of the protections of § 853(n), including those provided to bona fide purchasers.  Moreover, the Eleventh Circuit has held that "new arguments" which serve to avoid the impedance of important federal law policies can be considered in under Rule 59(e).  See Lussier v. Dugger, 904 F.2d 661, 667-68 (11th Cir. 1990).  This motion seeks to promote and protect the important federal law policy of protecting "bona fide purchasers for value" in the context of § 853(n)(6).  Thus, each of the arguments asserted herein should be considered by the Court, even to the extent that those arguments, if any, could be deemed to be "new" or "raised for the first time" in this motion.

[3]  Because § 853(n) "is substantially identical to [21 U.S.C.] § 1963(l)," cases applying these analogous statutes, as well as other authority regarding the interpretation thereof (such as legislative history) have been used interchangeably.  See United States v. Gilbert, 244 F.3d 888, 906 n.47 (11th Cir. 2001); United States v. Reckmeyer, 836 F.2d 200, 209-09 (4th Cir. 1987).

allowed "the government's interest in the property to be forfeited [to vest] at the time the

crime is committed, rather than upon conviction, as had previously been the case...." <u>Id.</u>

at 1489.

According to the Fourth Circuit, "Congress' primary concern in adopting the

relation-back provision was to make it possible for courts to void sham or fraudulent

transfers that were aimed at avoiding the consequences of forfeiture." <u>United States v.</u>

<u>Reckmeyer</u>, 836 F.2d 200, 208 (4th Cir. 1987)(citing S.Rep. No. 225, 98th Cong., 2d

Sess. 209 n. 47).  However, "<u>Congress did not intend to permit courts to void 'arms'-</u>

<u>length' transactions</u>." <u>Id.</u> (emphasis added.)

Thus, Congress' express intent in enacting § 853 was to protect the United States

against sham transactions <u>while, at the same time, protecting the rights of innocent third-</u>

<u>parties, like R&H, whose interests in the forfeited property were obtained at arms'-</u>

<u>length</u>.  The Court's Opinion failed to accomplish Congress' express intent because the

Court did not decide whether R&H qualifies as a bona fide purchaser for value.  The

Court's omission was, therefore, a manifest error of law, and R&H should be granted

relief under Rule 59(e).

**B.    R&H's perfected security interest in the forfeited property qualifies
        R&H as a "bona fide purchaser for value" under subsection (B).**

R&H qualifies as a "bona fide purchaser for value" because it has a specific and

perfected security interest in the forfeited property.  In <u>United States v. Lavin</u>, the United

States District Court for the Eastern District of Pennsylvania noted that "Congress has

offered very little direction as to what is meant by the concept of 'bona fide purchaser for

value of the right, title or interest' within the meaning of [§ 853(n)(6)(B)].  A liberal

construction...would be one that looks toward...a view to preventing the Government's

sweeping power of forfeiture from pulling away properties that really, in all propriety, should not have been attributed to the criminal, but properly belonged to others." 745 F.Supp. 1065, 1072 (E.D. Pa. 1990), *aff'd on appeal*, 942 F.2d 177(3rd Cir. 1991).[4] (emphasis added.)

Since the passage of §853(n), there have been several, sometimes conflicting, attempts to define "bona fide purchaser for value." See, e.g., United States v. Reckmeyer, 836 F.2d 200, 209 (4th Cir. 1987)("bona fide purchaser" includes unsecured creditors); United States v. Watkins, 320 F.3d 1279, 1282 (11th Cir. 2003)(following the majority view that "bona fide purchaser" does not include unsecured, general creditors). In the broadest application of § 853(n)(6)(B), the Reckmeyer Court held that "in order to effectuate [Congress'] legislative intent, the term 'bona fide purchaser for value' must be construed liberally to include all persons who give value to the defendant in an arms' length transaction with the expectation that they would receive equivalent value in return." 836 F.2d at 208. In applying this definition, the Fourth Circuit held that all creditors, both secured and unsecured, involved in an arms' length transaction with a defendant whose property was subject to criminal forfeiture under § 853(n) are bona fide purchasers for value. Id. at 205.

The Eleventh Circuit, in Watkins, declined to accept the full scope of Reckmeyer's definition of a bona fide purchaser. 320 F.3d at 1283. Rather, the Watkins Court adopted the "majority rule" that general unsecured creditors do not qualify as "bona fide purchasers for value." Id. (emphasis added.) In rendering its decision, the

---

[4] In affirming the district court's opinion, the Third Circuit confirmed that, "in light of section 853(o) and the well-settled dictates of forfeiture law," courts are obliged to construe "bona fide purchaser" liberally in applying the provisions of subsection (B). Lavin, 942 F.2d at 184.

Watkins Court echoed a familiar lament of many of the courts which have declined to include unsecured creditors in the definition of "bona fide purchaser" in finding that "[u]nlike secured creditors, general creditors cannot point to any one specific asset and claim that they are entitled to payment out of the value of that specific asset. General creditors instead enjoy an interest in the entire estate of the debtor." Id., see also United States v. Campos, 859 F.2d 1233, 1239 (6th Cir. 1988)(noting that "[i]t is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest civil forfeitures.")

By specifically excluding unsecured creditors from the definition of "bona fide purchaser for value," however, the Eleventh Circuit (as well as the other courts which have adopted the majority rule) implicitly recognized that secured creditors may be bona fide purchasers for value under § 853(n)(6)(B). Further, the Lavin Court found that, in applying the provisions of subsection (B), the United States government has recognized that "bona fide purchaser" includes secured creditors. See Lavin, 745 F. Supp. at 1072, aff'd on appeal, 942 F.2d 177(3rd Cir. 1991)(noting that since the passage of subsection (B), the United States had "uniformly" asserted that "one must be a secured creditor to present oneself in the posture of bona fide purchaser of a statutorily cognizable 'right, title or interest'").

Materialman's lien holders, like R&H, are by definition secured creditors because, unlike the general creditors discussed in Watkins, a materialman's lienholder can point to a specific asset (i.e.- the real property identified in the lien) and claim that it is entitled to payment from the value of that specific asset. The whole purpose of the

9

materialman's lien statute is to create of a security interest in specifically identified property to protect those who supply materials and labor from defaulting property owners. See, e.g., Wilkinson v. Rowe, 266 Ala. 675, 98 So. 2d 435 (1957). Thus, materialman's lienholders do not suffer the same infirmity which precludes general, unsecured creditors from qualifying as a "bona fide purchaser" under subsection (B).

In its Brief, R&H established that it was a secured creditor of Carmichael by demonstrating that it has a security interest in the Carmichael Center through a perfected materialman's lien pursuant to Ala. Code §§ 35-11-210, et seq. (See R&H's Brief at p. 4-6.) It is undisputed that, in good faith and without knowledge of any criminal conduct by Carmichael,[5] R&H provided valuable consideration to Carmichael by supplying both materials and labor for the improvement of the Carmichael Center. (Stip. of Facts at ¶¶ 1-6). In exchange for this consideration, R&H received a security interest in the Carmichael Center property in the form of a statutorily created materialman's lien. E.g., Gamble's, Inc. v. Kansas City Title Ins. Co., 217 So. 2d 923, 927 (1969)(a materialman's lien accrues and attaches to property upon the delivery of material to the property, not upon the filing of an action to enforce the lien). R&H demonstrated that, under Alabama law, a materialman's lien is perfected by its compliance with three essential steps: (1) provision of statutory notice to the owner of the property; (2) filing of a verified statement of lien in the probate office of the county where the improvement is located; and (3) filing of a suit to enforce the lien. E.g., Bailey Mortgage Co. v. Gobble-Fite Lumber Co., Inc., 565 So. 2d 138, 141 (Ala. 1990) (citing Ala. Code § 35-11-210). The

---

[5]  The United States admits in its Brief that it does not contend that R&H had any knowledge of the ongoing criminal activity at the Carmichael Center at the time R&H provided the materials and labor in question. See United States' Brief at p. 10, n.1.

Court, in its Opinion, found that "it is not disputed that R&H complied with these steps within the relevant statutory time periods."[6] As a result, R&H has established itself as a perfected, secured creditor of Carmichael in relation to the Carmichael Center and, therefore, qualified as a "bona fide purchaser for value of a right, title or interest" under § 853(n)(6)(B). Thus, the Court committed an error of law in failing to either consider or rule upon R&H's ability to partake of the forfeiture proceeds under subsection (B).

    **C.**    **As R&H qualifies as a "bona fide purchaser," the Court erred in focusing solely on the temporal relationship of the criminal acts to the accrual of R&H's interest in the forfeited property.**

In contrast to § 853(n)(6)(A), which requires the petitioner's interest to be vested at the time of the commission of the acts which gave rise to the forfeiture of property, § 853(n)(6)(B) contains no such limitation. The only requirement for validation under subsection (B) is that the petitioner must demonstrate that she/he was a bona fide purchaser for value of the property subject to the forfeiture order. As is set forth above, R&H occupies the status of a bona fide purchaser for value as a secured creditor of Carmichael's interest in the Carmichael Center. Therefore, it was error for the Court to focus solely on the time at which R&H's security interest accrued in relation to the time of the commission of the criminal acts which gave rise to the forfeiture.

---

[6]  Even if R&H had not perfected its materialmen's lien, R&H would still be a secured creditor. The Eleventh Circuit, in <u>Watkins</u>, recognized that a party with an "attached" security interest also enjoys "secured creditor" status. <u>Watkins</u>, 320 F.3d at 1282 (holding that petitioners "were merely unsecured creditors of [defendant], as they possessed no "attached" security interest in the funds they gave him."); <u>see also</u> In re Dillard Ford, Inc., 940 F.2d 1507, 1511 (11th Cir. 1991) (noting that a "security interest must attach to the property [in question] in order to be enforceable"). As R&H demonstrated in its Brief at p. 3-4, a materialmen's lien "arises and attaches" at the time materials or labor are provided for the improvement of real property. E.g., Gamble's, Inc. v. Kansas City Title Ins. Co., 217 So. 2d 923, 927 (1969). Accordingly, because R&H's lien was, at the very least, attached to the Carmichael Center, R&H is a "bona fide purchaser for value."

    **D.**    **The United States' objection to R&H's assertion of the protections due it as a bona fide purchaser is misplaced.**

The United States contests R&H's standing under § 853(n)(6)(B) in its Brief, citing *United States v. Watkins*, 320 F.3d 1279 (11th Cir. 2003) for the proposition that "[u]nsecured creditors cannot be bona fide purchasers for value under 21, United States Code, Section 853(n)(6)(B)." (See United States' Brief at p. 10.) The United States argued that R&H does not have perfected materialman's lien on the Carmichael Center, and, as a consequence, it is an unsecured creditor and therefore not a bona fide purchaser for value. (Id.) Of the various arguments made in support of the United States' position on the issue of perfection, the only argument left unresolved by the Court's Opinion is the United States assertion that perfection requires the entry of a judgment by the state court in favor of R&H on its state court claim.[7]

As discussed in section I(B), above, Alabama law is clear that a materialman's lien is perfected upon the <u>filing</u> of an action to enforce the lien (a requirement with which R&H has complied). See <u>Bailey Mortgage Co. v. Gobble-Fite Lumber Co., Inc.</u>, 565 So. 2d 138, 141 (Ala. 1990)(finding that the <u>final step</u> for perfection is to file suit in the circuit court of the county where the property is located). However, even if R&H had not perfected its lien, the United States' argument regarding the absence of a state court judgment would still fail.

---

[7] Although the United States also argues that R&H's lien is unenforceable because the United States was not made a party to the state court proceeding, this "joinder" argument does not affect the issue of perfection of the lien. (See R&H's Reply to United States of America's Response to Show Cause Order, filed November 17, 2005, at p. 2). Further, the United States' argument is disingenuous as the United States has never made attempt to intervene in the state court action to protect its interest in the Carmichael Center, even though it had actual notice of R&H's state court action at a time <u>before</u> Carmichael was convicted.

R&H filed its materialman's lien prior to the United States' *lis pendens*. (See Stip. of Facts at ¶¶ 4, 8.) R&H also filed an action to enforce its materialman's lien before Carmichael was convicted. (Id. at ¶¶ 9-13.) The state court action is still pending. R&H should not be punished simply because the adjudication of its state law claims has taken longer than the prosecution of the criminal charges against Carmichael.[8]  To hold otherwise would pit the federal courts against the state courts in a virtual race to final judgment. Those who could successfully prosecute their state court claims to a favorable judgment before a conviction would win; those who did not, for whatever reason, would lose.

Therefore, even if R&H did not have a perfected security interest in the forfeited property, the logical solution to the United States' objection to the absence of a state court judgment would not be the rejection of R&H's claim, but would be the entry of an order requiring the United States to hold the proceeds from the forfeiture sale of the Carmichael Center in escrow until the state court renders its final judgment on R&H's claims.  While R&H maintains that such a provision is unnecessary as R&H currently maintains a perfected security interest in the Carmichael Center, the Court can avoid the injustice of requiring the parties to "race to a judgment" by simply delaying the distribution of that portion of the forfeiture sale proceeds to which R&H would be entitled until the state court renders its judgment.

---

[8] R&H's state court claims are pending in the Montgomery County Circuit Court.  The case was initially assigned to Judge Johnnie Hardwick.  Before Carmichael's conviction, Judge Hardwick indicated that he was going to grant summary judgment in favor of R&H, but denied R&H's motion instead.  R&H submitted a motion to reconsider the denial, but before the Court could rule on the motion, Judge Hardwick recused himself after testifying on Carmichael's behalf during the trial before this Court.  R&H's case was eventually reassigned to Judge Tracy McCooey where it remains pending.

**II.    R&H Should be Granted Relief under Rule 59(e) Because the Judgment Creates Manifest Injustice.**

The judgment entered against R&H should be vacated pursuant to Rule 59(e) because it creates a manifest injustice: (1) by contravening the well-settled principal of notice of property interests; and (2) by requiring innocent third parties to investigate property owners for ongoing criminal activity before providing valuable consideration to the property owner.

**A.    The Court's Opinion is manifestly unjust because it contradicts the fundamental concept of notice of property rights.**

The American system of property rights is premised upon the concept of notice. See, e.g., Bessemer v. Gertsen, 381 So. 2d 1344, 1348 n.5 (Fla. 1980)(confirming that "[t]he principle of record notice is fundamental to our law of property"), see generally, 14 R. Powell, Real Property § 82.01[3], at 82-13 (M. Wolf ed. 2000)(noting that recording acts have two separate, but interconnected, purposes: (1) to protect purchasers who acquire interests in real property for a valuable consideration and without notice of prior interests from the enforcement of those claims; and (2) to create a self-operative public record system of notification from which prospective purchasers of interests in real property may ascertain the existence of prior claims that might affect their interests.) This concept of notice has been codified into laws which require the recording of interests in various forms of real property and, in some cases, personal property or goods. See, e.g., Ala. Code § 35-4-90 (1975)(requiring the recording of certain property rights in the State of Alabama.).

As stated above, the Court's Opinion focuses solely on the provisions of § 853(n)(6)(A). Under subsection (A), a forfeiture order must be amended if the third-party shows that an interest in the property "was vested in the [the third-party] rather than

14

the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property...."

When examined in the context of a third-party interest which spans only a portion of the time in which the relevant criminal acts were committed, subsection (A) is unclear because its plain language does not specify whether the third-party's interest must be vested or superior "at the time of the commission of [all of] the acts which gave rise the forfeiture," or whether the third-party must show only that the interest was vested or superior "at the time of the commission of [any of] the acts which gave rise to the forfeiture."

In the instant case, evidence introduced at Carmichael's trial established that the Carmichael Center was used as early as 2001 for illicit purposes. It is undisputed that R&H's materialman's lien interest in the Carmichael Center arose in November of 2002 when it began to supply material and labor which forms the basis of its materialman's lien. (Opinion at p. 8.) In its Opinion, the Court found that R&H could not satisfy the requirements of § 853(n)(6)(A) because R&H's interest the Carmichael Center did not arise in 2001, when the illicit use of the property began. (Id. at p. 10-11.) The Court, therefore, necessarily read subsection (A) to require R&H to show that its interest in the forfeited property was vested "at the time of the commission of [all of] the acts which gave rise to the forfeiture."

At the time R&H began to supply materials and labor to Carmichael for the improvement of the Carmichael Center, however, R&H had no notice of the ongoing criminal activity at the Center or of the potential forfeitability of the Center. Further, R&H recorded its materialman's lien against the property before the United States filed

15

the *lis pendens* which first gave notice of the possibility of the present forfeiture proceeding. (See Stip. of Facts at ¶¶ 4, 8.) Thus, in direct contravention of the well-settled concept of notice, the Court's Opinion finds that R&H cannot protect its property interests in the Carmichael Center simply because R&H's interest arose during the course of, but not prior to, ongoing criminal activity of which R&H had <u>no notice</u>.[9] Therefore, the Court's Opinion creates a manifest injustice by elevating the forfeiture rights of the United States above the security interest held by R&H despite R&H's lack of notice of the forfeitability of the property.

**B.     The burden to investigate property owners implicitly placed on innocent third parties by the Court's Opinion is also manifestly unjust.**

By failing to protect R&H's interest in the face of a forfeiture arising from acts of which R&H had no notice, the Court's Opinion essentially requires innocent third-parties, like R&H, which provide materials and labor to property owners, to investigate each and every property owner to make sure that the owner is not engaged in ongoing illegal activity at the time the materials and labor are provided. If the Court's Opinion were correct, any supplier of labor or material which did not conduct such an investigation into the property owners with which it did business would be forced to accept a substantial and unknown risk to its statutorily created property rights. Such a burden would be incredibly onerous and wholly unnecessary to accomplish the express intent of § 853.

---

[9] Whil e evidence produced at Carmichael's trial showed that the Carmichael Center was used as early as 2001 for illicit activities, the United States has not shown during the course of these forfeiture proceedings that illicit activity was ongoing at the time in which R&H began to supply materials and labor (November 2002). Therefore, under the Court's Opinion, R&H would not only be saddled with the burden of criminal activity of which it did not have notice, but also with the burden of criminal activity of which is could not have otherwise obtained notice.

16

Such an unacceptable burden could be avoided by: (1) construing the language of subsection (A) to protect third parties who obtain a good faith "right, title or interest" in the property "at the time of [any of] the acts" which lead to the forfeiture; or (2) construing "bona fide purchaser" in subsection (B) to include secured creditors who, in good faith, obtain a specific security interest in the forfeited property by providing value in an arms'-length transaction. Because the Court's Opinion would require innocent third-parties to accept the onerous and unnecessary burden of investigating the property owners with which they do business, the Opinion creates a manifest injustice.

## <u>Conclusion</u>

For the foregoing reasons, R&H respectfully requests the Court to alter or amend the judgment entered against R&H in accordance with the arguments contained herein, or to vacate the judgment in its entirety.

Respectfully submitted this 28th day of March, 2006.

/s Paul A. Clark
W. Joseph McCorkle, Jr.
Paul A. Clark (CLA076)
Attorneys for Petitioner Reese & Howell, Inc.
BALCH & BINGHAM LLP
105 Tallapoosa Street
Suite 200
Montgomery, AL 36104-2549
Telephone: (334) 834-6500
Facsimile: (866) 783-2741
E-mail:jmccorkl@balch.com
      pclark@balch.com

17

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this the 28th day of March, 2006:   Ronald Ray Brunson, Marion D. Chartoff, John T. Harmon, Stephen P. Feaga, Michael A. Griggs, Susan G. James, A. Clark Morris, Terry F. Moorer, Barry Teague, Brian Ray Walding, and Lisa Monet Wayne.

I hereby certify that I have mailed by United States Postal Service the foregoing to the following non-CMM/ECF participant:

> Frederick Enslen, Jr.
> Frederick T. Enslen, P.C.
> Post Office Box 240848
> Montgomery, Alabama  36124-0848

Respectfully submitted,

/s Paul A. Clark
W. Joseph McCorkle, Jr.
Paul A. Clark
Attorneys for Petitioner Reese & Howell, Inc.
BALCH & BINGHAM LLP
105 Tallapoosa Street
Suite 200
Montgomery, AL 36104-2549
Telephone: (334) 834-6500
Facsimile: (866) 783-2741
E-mail: jmccorkl@balch.com
        pclark@balch.com

18

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA    )
                                )
     v.                   )   CRIMINAL ACTION NO.
                                )     2:03cr259-MHT
LEON CARMICHAEL, SR.       )        (WO)

<u>ORDER</u>

In accordance with the memorandum opinion entered this date, it is ORDERED as follows:

(1) Petitioner Reese & Howell Inc.'s motion to alter, amend, or vacate (Doc. No. 655) is denied to the extent petitioner Reese & Howell Inc. seeks validation of its lien pursuant to subsection (n)(6)(A) to 21 U.S.C. § 853.

(2) The motion is granted to the extent the court finds that petitioner Reese & Howell Inc. has met its burden of showing by a preponderance of the evidence that, pursuant to subsection (n)(6)(B), it holds a materialmen's lien that remains attached to the

Exhibit H

Carmichael Center pending final judgment of the state court.

(3) The parties are to submit in writing on or before June 12, 2006, a joint proposal for (a) amending the court's second preliminary order of forfeiture to reflect petitioner Reese & Howell Inc.'s contingent interest in the property pending final judgment in state court regarding enforcement of the lien and (b) clearing title to the relevant property such that interlocutory sale may proceed while protecting petitioner Reese & Howell Inc.'s contingent interest through preservation of a sum equal to the claimed lien.

DONE, this the 7th day of June, 2006.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:03cr259-MHT |
| LEON CARMICHAEL, SR. | ) | (WO) |

## OPINION

Defendant Leon Carmichael, Sr. was convicted of
conspiring to distribute marijuana and conspiring to
commit money laundering. On March 14, 2006, the court
issued an opinion and judgment denying a petition, filed
by Reese & Howell, Inc. ("R & H"), to validate third-
party interest in the Carmichael Center, which had been
owned by defendant Carmichael and forfeited pursuant to
21 U.S.C. § 853 as a result of his conviction. United
States v. Carmichael, 419 F.Supp.2d 1376 (M.D. Ala.
2006). This criminal case is again before the court,
this time on petitioner R & H's motion to alter, amend or

EXHIBIT I

vacate the judgment.  For the reasons that follow, the motion will be granted in part and denied in part.


## I. BACKGROUND

The facts are set forth in more detail in the court's March 14 opinion, <u>Carmichael</u>, 419 F.Supp.2d at 1377-1378, and will be summarized here only briefly.  On November 19, 2003, Carmichael was indicted; the indictment included a forfeiture allegation implicating the Carmichael Center, among other properties.  On the same day, R & H filed and had recorded a materialmen's lien against the center for $ 182,367.28 in materials and labor R & H had provided for the center and for which it had not been paid.  The work had been done pursuant to a written contract between Carmichael and R & H.  A month later, on December 19, 2003, the United States filed a lis pendens in the probate court of Montgomery County giving notice of the forfeiture action against the center.

2

On January 6, 2004, R & H filed a civil action against Carmichael in state court, seeking, among other things, to enforce the materialmen's lien.  The United States has never been made a party to this state-court action, which remains pending.

On June 17, 2005, Carmichael was convicted by a jury. Evidence produced during trial established that the center was used as early as 2001 to receive and store some portion of the marijuana for which Carmichael was found accountable, and as a delivery point for drug proceeds.  Two months later, on August 15, based on the conviction, the court preliminarily ordered Carmichael to forfeit the center to the United States pursuant to 21 U.S.C. § 853.

On September 13, 2005, R & H timely filed a petition seeking validation of its interest in the center pursuant to § 853, and, on March 14, 2006, the court entered an opinion and judgment denying R & H's petition.  R & H now asks that the court reconsider its decision.

3

## II. DISCUSSION

Federal Rule of Civil Procedure 59(e), which authorizes a motion to alter or amend a judgment after its entry, provides no specific grounds for relief; rather, "the decision to alter or amend judgment is committed to the sound discretion of the district judge." American Home Assur. Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1238-39 (11th Cir. 1985). Here, R & H contends that the court misapplied the law to the facts.

In its March 14 opinion, the court analyzed R & H's interest in the center under 21 U.S.C. § 853(n), which governs third-party interests affected by the forfeiture of property in a criminal proceeding. The third-party petitioner in a § 853(n) proceeding bears the burden of proof to establish by a preponderance of the evidence that it has a legal interest in the property that renders the order of forfeiture invalid in whole or in part.

Under § 853(n), such legal interest may come about in two ways: under subsection (n)(6)(A) to 21 U.S.C. § 853,

4

the petitioner must show that it had a superior interest
in the property at the time of the acts giving rise to
forfeiture; or, under subsection (n)(6)(B) to 21 U.S.C.
§ 853, it must show that it was a bona fide purchaser for
value without reason to know that the property was
subject to forfeiture.[1]   21 U.S.C. § 853(c) contains a

---

1.   21 U.S.C. § 853(n)(6) reads:

"If, after the hearing, the court
determines that the petitioner has
established by a preponderance of the
evidence that--

(A) the petitioner has a legal right,
title, or interest in the property, and
such right, title, or interest renders
the order of forfeiture invalid in whole
or in part because the right, title, or
interest was vested in the petitioner
rather than the defendant or was
superior to any right, title, or
interest of the defendant at the time of
the commission of the acts which gave
rise to the forfeiture of the property
under this section; or

(B) the petitioner is a bona fide
purchaser for value of the right, title,
or interest in the property and was at
the time of purchase reasonable without
cause to believe that the property was

(continued...)

5

'relation back' provision under which "all right, title, and interest in the [forfeited] property ... vests in the United States upon the commission of the act giving rise to forfeiture."

In it March 15 opinion, the court held that, under subsection (n)(6)(A), R & H had no vested or superior interest in the Carmichael Center at the time of the criminal acts giving rise to forfeiture of the property. _Carmichael_, 419 F.Supp.2d at 1379. R & H's interest, if valid, vested only after the criminal acts charged in the indictment began.[2] _Id_.

---

1.    (...continued)
      subject    to    forfeiture    under    this
      section;

      the   court   shall   amend   the   order   of
      forfeiture    in    accordance    with    its
      determination."

2.    "Federal law decides what interests are subject to forfeiture under section 853 [and] state property law defines what those interests are in the first instance." _United States v. Kennedy_, 201 F.3d 1324, 1334 (11th Cir. 2000). The court found that, under state law, a perfected materialmen's lien relates back to the date that materials or labor was provided to the property: in
                                                    (continued...)

R & H now challenges both the holding that it had no interest in the center under subsection (n)(6)(A), and the court's failure to analyze its interest as a potential bona fide purchaser under subsection (n)(6)(B). The court declines to revisit its holding in the earlier order, and R & H's motion to alter is denied to the extent that it requests the court to reconsider its analysis of R & H's interest under 21 U.S.C. § 853(n)(6)(A).

Admittedly the court did not consider the theory of recovery under subsection (n)(6)(B), but this was because R & H did not explicitly argue it. The government's response to R & H's motion to alter is devoted entirely to the argument that R & H should not now be permitted to raise a new claim that could have been argued before, thereby taking 'two bites at the apple.' R & H counters that its argument is not new, because its original

---

2.   (...continued)
this case, November 2002.  <u>Carmichael</u>, 419 F.Supp.2d at 1379.

petition to validate third-party interest claimed all the protections of § 853(n)(6), even though R & H only advanced specific arguments under subsection (n)(6)(A).

While it is not the court's role to litigate the case for the parties, the court finds that the question of R & H's status as a bona fide purchaser was technically before the court in R & H's original petition; indeed, the government's original brief in opposition to R & H's petition to validate, while devoted largely to countering petitioner's express arguments, does include a paragraph (at p. 10) arguing that R & H should not be considered a bona fide purchaser for value, thereby indicating that the issue was before the court in at least a general sense. Thus, it would not have been inappropriate for the court to rule on R & H's subsection (n)(6)(B) argument, despite the fact that R & H did not actively advance that argument. And unlike the interests described in subsection (n)(6)(A), the interests of

8

qualifying bona fide purchasers under subsection
(n)(6)(B) are protected no matter when they vested.

As a result, the court finds, under Rule 59(e), that
it should have considered R & H's argument under
subsection (n)(6)(B). Because, as will be shown below,
R & H's interest should be conditionally validated,
alteration of the judgment is appropriate because it
serves the useful purpose of vindicating existing rights.

R & H's contention that it is a bona fide purchaser
for value under subsection (n)(6)(B) rests on three
distinct but cumulative arguments: (1) a perfected
materialmen's lien is a secured interest; (2) secured
creditors are purchasers for value under § 853(n); and
(3) R & H has a perfected materialmen's lien under
Alabama law. The government has challenged only the last
of these arguments, stating that R & H does not have a
perfected or enforceable lien and is therefore an
unsecured creditor. The government has advanced no
argument about whether a perfected lien, should it exist,

9

would in fact grant secured creditor status, nor whether such status means that R & H could be considered a purchaser for value.


A. <u>Perfected lien as a secured interest</u>

The least thorny of the issues presented is whether a materialmen's lien, if valid, would grant R & H secured creditor status against Carmichael and his center. A materialmen's lien--also known as a mechanic's lien--is defined as "a lien on real property in favor of a person or entity furnishing labor or materials for the erection of buildings or making improvements on real property." Keith C. Kantack, A Guide To Mechanics' Liens in Alabama, 61 Ala. Law. 202 (2000). In Alabama and elsewhere, such liens were created by statute to promote development by conferring priority or 'secured' creditor status to those who contribute labor or material to improve property. Under the common law, such contributors had the status of general or 'unsecured' creditors. 1-32 Alabama Property

Rights and Remedies § 32.1. "When a mechanic's lien is filed by a person or entity, the mechanic's lien creates a legal encumbrance on the subject real property which may negatively affect the property owner or other interest holders in the subject real property such as a financial institution." Kantack, 61 Ala. Law. at 202. Materialmen's liens in Alabama are codified at 1975 Ala. Code §§ 35-11-210 through 35-11-234.

Therefore, "[t]he whole theory of the statute is to give the material-man a preferred claim on a lot of land, for the amount he has contributed in improving that particular land, or the buildings situated thereon." Eufaula Water Co. v. Addyston Pipe & Steel Co., 89 Ala. 552, 556 (Ala. 1889). R & H correctly assumes that it is a secured creditor if its lien has been perfected, and the government makes no argument to the contrary.

11

B. <u>Secured creditors as purchasers for value</u>.

The Eleventh Circuit has explicitly held that unsecured creditors cannot be considered bona fide purchasers under subsection (n)(6)(B) of 21 U.S.C. § 853(n) because "their interest lies against the debtor personally as opposed to any specific property...." <u>United States v. Watkins</u>, 320 F.3d 1279, 1284 (11th Cir. 2003). From this logic could follow the principle that parties with an interest in specific property--that is, secured creditors, including lienholders--may properly be considered purchasers for value under subsection (n)(6)(B).

This principle has been made explicit in the Sixth Circuit, where "the bona fide purchaser exception of § 853(n)(6)(B) includes those individuals who purchase for value forfeitable property as innocent buyers or lienholders." <u>United States v. Harris</u>, 246 F.3d 566, 575 (6th Cir. 2001). This court agrees that R & H should be considered a purchaser for value under subsection

12

(n)(6)(B) if it is made a secured creditor by a state court's determination that it holds a valid lien against the center.

## C. Validity of the lien

The remaining and determinative question is whether R & H holds an enforceable materialmen's lien under Alabama law. The parties frame this question as whether the lien has been perfected; R & H argues that it has, and the government argues that it has not, because the state court has yet to rule in the action to enforce the lien.

Nowhere in the Alabama materialmen's lien statute does the language of 'perfection' appear, and case law reflects ongoing confusion over the meaning and legal effect of the term 'perfected' in this context. It is clear that a lien remains inchoate--or unattached to the property--until "action is taken to perfect and enforce it." 1-32 Alabama Property Rights and Remedies § 32.11;

13

see also, e.g., United States v. Costas, 273 Ala. 445, 448 (Ala. 1962). In other words, "the right to have the debt secured by the lien would be lost if there were noncompliance with the lien statutes or if the action were not brought on time." 1-32 Alabama Property Rights and Remedies § 32.1.

It is undisputed that a lien will be lost if at least three steps are not performed: (1) provision of statutory notice to the owner of the property pursuant to 1975 Ala. Code § 35-11-210; (2) filing of a verified statement of lien in the probate office of the county where the improvement is located pursuant to § 35-11-213; and (3) filing of a suit to enforce the lien within six months of the maturation of the debt pursuant to § 35-11-221. Bailey Mortgage Co. v. Gobble-Fite Lumber Co., 565 So. 2d 138, 141 (Ala. 1990).

The first step in this process provides notice to property owners of a potential lien in the absence of a direct contractual relationship between the property

14

owners and the claimant.    Where, as here, the material supplier (R & H) had a direct contractual relationship with the owner (Carmichael), the statutory notice requirement is of course satisfied, and a 'full price' materialmen's lien may be asserted.    Kantack, 61 Ala. Law. at 202.[3]

The second step provides notice of the lien to all other existing and potential interested parties.    1975 Ala. Code § 35-11-213; First Ave. Coal & Lumber Co. v. Rimer, 222 Ala. 545, 547 (Ala. 1931) ("We can but think the recorded statement is intended to give constructive

---

3.    Two types of materialmen's liens are available under Alabama law.    The first, known as a 'full price' lien, allows the claimant to recover the full price of its original contract so long as the property owner was notified in writing of the materials that would be furnished to the property before work began, as is the case with a written contract.    1975 Ala. Code § 35-11-10; Bailey, 565 So. 2d at 141; Kantack, 61 Ala. Law. 202. The second type of lien, known as an 'unpaid balance' lien, permits a claimant (a subcontractor or supplier with no direct contractual relationship with the property owner) to recover the amount of its contract so long as that amount does not exceed the unpaid balance due from the owner to the general contractor.    Only the first type of lien is at issue in this case.

15

notice until the lien is satisfied."). The third step, imposing a time limitation on the filing of an enforcement action, in theory ensures the speedy disposition of the interests at stake. It is undisputed that R & H complied with the statutory requirements for each of these steps.

The Alabama Supreme Court has stated that, "The final step for perfection is to file suit in the circuit court of the county where the property is located." <u>Bailey</u>, 565 So. 2d at 143. R & H relies on this language to assert that, because it <u>filed</u> a lawsuit to enforce its claimed lien against the Carmichael Center, it has a perfected lien that should be validated as a property interest pursuant to subsection (n)(6)(B) of 21 U.S.C. § 853.

However, the government argues that the lien is not perfected until the state court <u>renders its judgment</u> enforcing the lien. In other words, although R & H complied with all statutory requirements, its lien must

16

fail because the federal case against Carmichael concluded (thereby transferring ownership of the property via forfeiture) before the state court case adjudicating the lien.

The government does not address the <u>Bailey</u> holding anywhere in its arguments, and instead relies on <u>Ex parte Grubbs</u>, 571 So. 2d 1119 (Ala. 1990), decided approximately four months after <u>Bailey</u>. In <u>Grubbs</u>, the Alabama Supreme Court interpreted 1975 Ala. Code § 35-11-224 to require that "liability for the debt be established and that a money judgment be entered against the debtor as a prerequisite to perfecting and enforcing the lien." <u>Id</u>. at 1120.[4]

---

4.    1975 Ala. Code § 35-11-224 reads:

"Any defendant, by appropriate plea, may put in issue the fact of indebtedness or the existence of the lien, or both, and may interpose any other defense applicable to the action; and if the court by its finding, or the jury by their verdict, as the case may be, ascertain that the plaintiff has a lien as claimed, judgment shall be entered
(continued...)

This language appears to reflect the distinction between an action to establish a debt and an action to perfect and enforce a lien to secure that debt. If an underlying debt is contested, it is clear that a state court must first find that the debt exists before enforcing a lien (through sale of property) to satisfy the debt. It is not clear, however, that the acts required for perfection of a lien are necessarily the same as those required for enforcement of the lien. The language in <u>Grubbs</u> can be read to conflate these two processes; that is, that final money judgment is required before either perfection or enforcement can occur. Alternatively, the language can be read simply to note that a money judgment is required before both perfection

---

4.   (...continued)
     for the amount secured thereby, interest
     and costs, against the party liable for
     the same, and establishing the lien, and
     condemning the property to sale for the
     satisfaction thereof; but if the finding
     or verdict is for the plaintiff only on
     the issue of indebtedness, a judgment
     shall be entered in his favor for the
     amount thereof as in other cases."

and enforcement can occur, with the result, for example, that a money judgment could be required before enforcement but not be required before perfection, meaning the lien can be perfected before enforcement.

The second reading would reconcile the language in Grubbs with the language in Bailey, and the Alabama Supreme Court has reaffirmed, after Grubbs, the idea that the lien is perfected before enforcement:

> "[A materialman's] lien comes into existence immediately when one provides any materials or performs labor upon the property but remains inchoate unless a statement of lien is timely filed with the judge of probate of the county in which the property is situated (§ 35-11-213), and unless suit is timely filed to perfect the [materialman's] lien (§ 35-11-221). Once these two steps are timely undertaken, the lien relates back to the date that the materials or labor was provided, and the priority of the lien is determined according to § 35-11-211. Such a lien has priority over encumbrances attaching after the commencement of the work."

19

Metro Bank v. Henderson's Builders Supply Co., 613 So. 2d

339, 340 (Ala. 1993)(quoting Greene v. Thompson, 554

So.2d 376, 379 (Ala. 1989)).

However, the first reading of Grubbs (conflating the

steps to perfection and enforcement) has been adopted by

a lower court: "the Alabama Supreme Court has held that

... the lien is not perfected until the liability for the

debt owed to the supplier is established and a money

judgment is entered against the debtor." Burch v. First

Coastal Bldg. Supply, Inc., 606 So. 2d 146, 148 (Ala.

Civ. App. 1992).

Regardless   of   whether   Grubbs   and   Bailey   are

reconcilable, the government cannot rely on Grubbs to

argue that the transfer of ownership interest in the

Center, alone, extinguishes a materialmen's lien when the

transfer occurs prior to the state-court judgment.   In

Grubbs, a building company (contracting directly with the

property owners) failed to pay for materials provided by

two subcontractors in the construction of a house.   The

20

subcontractors filed statements of lien against the property and sued the contractor and the property owners seeking enforcement of the liens, thereby presumably accomplishing the steps to perfection set forth in Bailey.[5]

In the meantime, the contractor entered into bankruptcy proceedings, automatically staying the entry of judgment against it. The Alabama Supreme Court found that the subcontractors were barred from obtaining a money judgment against the contractor by operation of the bankruptcy stay, and barred from obtaining a money judgment against the homeowners because there had been no direct contractual relationship between them. Because no money judgment could be entered in the case, the liens could not be enforced, and the subcontractors were not

---

5. The Grubbs decision cites Bailey only for the general proposition that "[m]aterialman's liens, being statutory creations ... are inchoate and will be lost if the lienors fail to perfect them according to the requirements of the statute." Grubbs, 571 So. 2d at 1120. Nowhere does the decision refer to or address Bailey's explicit discussion of when perfection is accomplished.

21

entitled to satisfaction of the liens through sale of the property.[6]

The Alabama Supreme Court recognized that this result frustrated the purpose of the materialmen's lien statute, which is of course to elevate persons who provide labor or material for the improvement of real estate from the status of general creditors to that of secured creditors. Nonetheless, because materialmen's liens are statutory in

---

6. It is far from clear that a bankruptcy in fact prevents the entry of a money judgment to enforce a materialmen's lien. While 11 U.S.C. § 362(a)(4) stays lien-perfection actions after a bankruptcy filing, there is an exception to this rule for perfection actions brought pursuant to laws that permit property interests to relate back before the actual date of perfection. Alabama's materialmen's lien statute is such a law "because a properly perfected materialman's lien will relate back to the date materials were furnished at the construction site, even though the perfection takes place months later." In re Peek Constr. Co., 80 B.R. 226, 229 (Bankr. D. Ala.1986). See also 229 Main St. Ltd. Pshp. v. Mass. EPA (In re 229 Main St.), 262 F.3d 1, 4 (1st Cir. 2001)(holding that the automatic stay in a bankruptcy proceeding is not absolute because the bankruptcy code limits a debtor's ability to avoid statutory liens).

nature, the court held: "If a change in the statute is needed to protect a materialman when a money judgment cannot be entered against the debtor, that change must be made by the Legislature." Grubbs, 571 So. 2d at 1120-1121.

The central holding of Grubbs, therefore, is that an intervening event that prevents the adjudication of the underlying debt can thwart the enforcement of an otherwise valid lien. In the case at bar, the entry of money judgment to establish the debt and to enforce the lien is by no means impossible, it simply has not yet occurred. All statutory requirements have been met and a suit for enforcement timely filed.

The government's argument is that R & H's lien is extinguished because the government gained an ownership interest in the property before the state court ruled in the enforcement suit. This argument, in addition to expanding the reasoning in Grubbs well beyond the facts of that case, ignores the central purpose of any lien,

23

which is to preserve an interest in property and give notice to subsequent purchasers that they take the property subject to the lien.

Indeed, Alabama law establishes that even purchasers who acquire title after commencement of work on a property but before perfection of a materialmen's lien are bound by the lien if they had notice of the facts on which the lien was predicated. Benson Hardware Co. v. Jones, 223 Ala. 287, 289 (Ala. 1931), overruled on other grounds, Lily Flagg Bldg. Supply Co. v. J. M. Medlin & Co., 285 Ala. 402 (Ala. 1970). It follows that satisfaction of the statutory steps outlined in Bailey, including filing a verified statement of lien in the office of probate, gives notice to subsequent purchasers who then take the property subject to the lien. See Meads v. Dial Finance Co., 56 Ala. App. 84 (Ala. Civ. App. 1975) (holding that "[t]he right to a lien upon property arising from a contract between private parties may not be defeated merely by the subsequent transfer of

24

title to a governmental agency," so long as the agency has actual or constructive notice).

Therefore, the court finds that R & H's lien was not extinguished by Carmichael's conviction and the resulting transfer of property ownership to the government, which had knowledge of R & H's claim.[7]  The lien may not be enforceable until the state court renders a judgment, but the lien, perfected or not perfected yet, exists.[8]

---

[7].  The government does not and cannot argue that it did not have actual notice of R & H'S interest.  Although the government's interest in the property technically predates the work performed by R & H by operation of the relation-back provision of 21 U.S.C. § 853(c), it is not disputed that R & H filed its lien statement before the government filed its lis pendens, and long before Carmichael's conviction effected the forfeiture of the property in favor of the government.

[8].  The court is also troubled that the government's argument (mere delay by the state court in bringing its case to conclusion would cut off R & H's lien interest), would not only deny an interest based on an arbitrary factor entirely outside of the parties' control (at least as far as the record before this court shows), it could also run up against the Anglo-American common-law maxim that "'the act of the court shall prejudice no one.'" Middleton v. Dan River, Inc., 617 F.Supp. 1206, 1222 (M.D. Ala. 1985), affirmed in relevant part, 834 F.2d 903, 911 (11th Cir. 1987).

25

### D. <u>Joinder Requirement</u>

However, the government also argues that, because R & H failed to join the government in the enforcement action, it would not be bound by a state-court judgment. 1975 Ala. Code § 35-11-223(a) provides that "all persons interested in the matter in controversy, or in the property charged with the lien, may be made parties; but such as are not made parties shall not be bound by the judgment or proceedings therein."

This provision has been interpreted to mean that "[if] a lien claimant desires his judgment to be superior to the interest of persons who have acquired their interest in the property after commencement of the work but prior to the filing of the lien statement, he must join them as parties when he files suit to enforce his lien within the six-month period, provided he has actual knowledge or constructive notice of the interest of such persons at the time he files his suit to enforce the lien." <u>Lily Flagg</u>, 285 Ala. at 407.

The government gained actual ownership of the center on the date of Carmichael's conviction, June 17, 2005, more than a year and a half after R & H filed its lien statement.[9] However, the government appears to argue that its lis pendens, filed before R & H's civil action, established a property interest and obligated R & H to join the government in the state-court action.

Under the common-law doctrine of lis pendens, the filing of a lawsuit placed any affected property in the legal custody of the court so as to protect the property pending final resolution of the case.  As a necessary consequence, purchasers "were bound by the result of the litigation as it affected the property, though they might never have been joined as parties to the action or have known of the existence of the litigation." 1-5 Alabama

---

9.  Upon Carmichael's conviction, the government's interest in the center related back to the time of the commission of acts giving rise to the forfeiture of the property, through operation of 21 U.S.C. § 853(c).  As noted above, this relation back will not defeat the interests of bona fide purchasers without notice pursuant to 21 U.S.C. § 853(n)(6)(B).

Property Rights and Remedies § 5.13. The lis pendens statute, codified at 1975 Ala. Code § 35-4-130 et seq., does not alter the substance of the common-law rule; rather, it mitigates the harsh effects of the rule by ensuring that purchasers have at least constructive notice of pending litigation through the filing of a lien statement in probate court.

The question of whether a lis pendens is an interest in property for the purposes of naming parties in an action to enforce a materialmen's lien pursuant to 1975 Ala. Code § 35-11-223, which appears to be a question of first impression in Alabama courts, is not properly before the court at this time. The state court has yet to enter judgment establishing R & H's lien, and the government may yet be joined, or intervene, in that action to assert its interest in the property. Even if it does so, it is unclear whether the state court will need to decide the status of a lis pendens, since the government's lis pendens was filed after R & H filed its

28

statement of lien. Following <u>Lily Flagg</u>, this timing arguably absolves R & H from any obligation to join the government in the state-court action, even if the lis pendens is to be considered a valid property interest. Regardless, these issues will either be decided by the state court, or if the state court establishes R & H's lien without deciding the question of joinder, by this court at a later date. For the time being, R & H's lien remains attached to the Carmichael Center.


## III. REMEDIES

R & H holds a materialmen's lien attached to the Carmichael Center, but which remains dependent upon a pending state-court decision for enforcement. As a result, the government cannot vouchsafe clear title to potential purchasers of the property. R & H recommends solving this problem through the entry of an order requiring the government to hold proceeds in the amount

of the lien from the forfeiture sale in escrow until the state court renders its judgment.

The court notes, however, that 1975 Ala. Code § 35-11-233(b) foresees precisely this situation, and provides for the transfer of a materialmen's lien on property to other security, in the form of money or a bond, deposited with the court in which the action is brought, pending judgment regarding the satisfaction of the lien. Such a transfer would presumably have the effect of clearing title to the property, and the court will request the views of the parties regarding this remedy in an accompanying order.

Additionally, the court will solicit the views of the parties regarding the amendment of the second preliminary order of forfeiture to reflect this contingent interest.

IV. CONCLUSION

For the reasons discussed above, R & H's motion to alter will be denied to the extent it seeks validation of

30

its lien pursuant to subsection (n)(6)(A); the motion will be granted to the extent the court finds that R & H has met its burden of showing by a preponderance of the evidence that, pursuant to subsection (n)(6)(B), it holds a materialmen's lien that remains attached to the Carmichael Center pending final judgment of the state court before which the action to enforce the lien is pending. The court will request the views of the parties regarding (a) amending the court's second preliminary order of forfeiture to reflect petitioner Reese & Howell Inc.'s contingent interest in the property pending final judgment in state court regarding enforcement of the lien and (b) clearing title to the relevant property such that interlocutory sale may proceed while protecting petitioner Reese & Howell Inc.'s contingent interest through preservation of a sum equal to the claimed lien.

An appropriate order will be entered.

DONE, this the 7th day of June, 2006.

            /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

REESE & HOWELL, INC.       )
                         )
        Plaintiff,         )
                         )
v.                            )
                         )  CIVIL ACTION NO. CV-03-2988
LEON CARMICHAEL, SR.     )
                         )
        Defendant.      )
                         )
                         )

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2005 SEP 27 PM 2: 15

## AMENDED COMPLAINT

Defendant Reese & Howell, Inc. ("R&H") asserts the following amended Complaint against Defendants Leon Carmichael, Sr. ("Carmichael") and the United States of America:

1.    R&H is an Alabama corporation with its principal place of business in Montgomery County, Alabama.

2.    Defendant Carmichael is a resident of Montgomery County, Alabama and is above the age of nineteen (19) years.

3.    The United States of America's Federal Marshals Service is in possession of proceeds against which R&H holds a valid materialman's/mechanic's lien interest.

3.    This Court has jurisdiction over this matter and venue is proper.

## FACTS

4.    On or about, R&H entered into a contract agreement with Carmichael to perform work and labor on the property commonly known as The Carmichael Center which is located at 150 E. Fleming Road, Montgomery, Alabama.  A copy of the contract between R&H and Carmichael is attached hereto as Exhibit "A".

EXHIBIT J

5.    R&H did work and labor for and provided materials and supplies to Carmichael at his request.

6.    Defendant Carmichael was billed for unpaid services, materials, and supplies provided by R&H. The total amount owed for R&H's services and materials and supplies was $182,367.28. Carmichael has failed to make payment in this amount to R&H. Copies of the invoices for unpaid labor and materials and labor are attached as Exhibit "B".

7.    Carmichael was indicted by a United States Grand Jury on November 19, 2003.

8.    The United States filed a *lis pendens* in the Probate Court of Montgomery County, Alabama giving notice of a forfeiture action against the Carmichael Center property on December 19, 2003.

9.    Upon Carmichael's conviction in the United States District Court for the Middle District of Alabama ("Middle District"), the United States became the owner of the Carmichael Center through forfeiture pursuant to 21 U.S.C. § 853.

10.    On June 28, 2006, this Court granted a joint motion to transfer R&H's lien from the Carmichael Center to the proceeds received by the United States from the interlocutory sale of the Carmichael Center.

11.    The interlocutory sale of the Carmichael Center was completed on June 28, 2006 and the United States Marshal's Service is holding the proceeds from that sale. A true and correct copy of the United States Marshal's status report is attached as Exhibit "C."

### COUNT I

12.    R&H realleges and reasserts each and every paragraph set forth above as if fully set out herein.

13.    Carmichael owes R&H the sum of $182,367.28 due by account stated.

2

WHEREFORE, R&H demands judgment against Leon Carmichael, Sr. in the amount of $ 182,367.28, plus interest, costs, and attorneys fees.

## COUNT II

14.    R&H realleges and reasserts each and every paragraph set forth above as if fully set out herein.

15.    Carmichael owes R&H the sum of $182,367.28 due by breach of contract.

WHEREFORE, R&H demands judgment against Leon Carmichael, Sr. in the amount of $182,367.28, plus interest, costs, and attorneys fees.

## COUNT III

16.    R&H realleges and reasserts each and every paragraph set forth above as if fully set out herein.

17.    At the time this counterclaim was filed, Defendant Carmichael was the owner of the property commonly known as The Carmichael Center located and situated at 150 E. Fleming Road, Montgomery, Alabama.

18.    R&H furnished certain building materials, supplies, and work for the improvement of the above-described real property owned by Carmichael.

19.    The above-described property was substantially enhanced in value by virtue of the materials, supplies, and work.

20.    Plaintiff filed in the Office of the Judge of Probate of Montgomery County, Alabama, on November 19, 2003, a verified statement of lien which is recorded in Real Property Book 2780 Page 14, wherein the R&H claims a mechanic's lien against the above-described real property, buildings and improvements.  A copy of the verified statement of lien is attached as Exhibit "D" and is incorporated by reference as if set out here in full.

3

21.    Upon the Order by this Court, R&H's lien interest was transferred from the Carmichael Center to the proceeds held by the United States Marshal's Service arising from the interlocutory sale of the Carmichael Center.

22.    R&H avers that Carmichael owes R&H the sum of $182,367.28, plus interest, by virtue of the materials, supplies and labor referenced above.  Despite R&H's demand for payment, this amount remains due and owed.

WHEREFORE, R&H prays that Carmichael and the United States be made a parties to this claim, that they be served with a copy of the amended complaint, and that they be required to plead or answer to same within the time required by law or else suffer default judgment to be issued against either or both of them, as may be appropriate.  Plaintiff further prays that upon a final hearing of this cause, the Court will make and enter an Order of Judgment as follows:

A.    That a money judgment be entered in favor of R&H and against Carmichael and the United States in the amount of $182,367.28, plus interest and costs;

B.    That a mechanic's lien be fixed and established on the proceeds held by the United States Marshal's Service from the interlocutory sale of the Carmichael Center as described above in favor of the R&H, in the amount of the money judgment, and that said proceeds be delivered to R&H in satisfaction of the lien;

C.    For a judgment for any such further, different, and general relief to which R&H may be entitled

4

Respectfully submitted this 27th day of September, 2006.

One of the Attorneys for Plaintiff
Reese & Howell, Inc.

**OF COUNSEL:**

W. Joseph McCorkle, Jr. (MCC056)
Paul A. Clark (CLA076)
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by United States Mail, properly addressed and postage prepaid, on this the 27th day of September, 2006:

J. Knox Argo, Esq.
J. Knox Argo, P.C.
6706 Taylor Circle
Montgomery, AL 36117

John T. Harmon
U.S. Attorney's Office
Post Office Box 197
Montgomery, Alabama 36101-0197

Of Counsel

To be served along with a copy if the Summons upon the United States Attorney for the Middle District of Alabama

# EXHIBIT A



# REESE AND HOWELL, INC.

| | | |
|---|---|---|
| THE STATE OF ALABAMA | ] | |
| COUNTY OF Montgomery | ] | AGREEMENT BETWEEN<br>CONTRACTOR AND OWNER |

THIS AGREEMENT, made and entered into on this 22nd day of November, 2002, between Leon Carmichael, of Montgomery, Alabama, hereinafter called Owner, and Reese & Howell, Inc., of Pike Road, Alabama, hereinafter called the Contractor;

## WITNESSETH:

1.   **Scope of Work:** The Contractor will furnish all material associated with Attachment "A". The material will be placed in mutual agreement between the contractor and the owner, for the expansion of owners parking area.

2.   **Insurance:** Workman's Compensation and other insurance as may be required by federal, state and local laws on street, sewer and water projects will be procured by the contractor and maintained by it for the duration of the contract. Liability insurance will be payable to the Owner and Contractor as their interest may appear.

3.   **Contact Price:** The Owner agrees to pay the Contractor those prices as shown on Attachment "A".

(a) Each month, the contractor will prepare an estimate for the portion of work performed thereof up to the first day of that month. This amount will then be due to the contractor, by the 15th day of that month less the aggregate of previous payments; and

(b ) Payments due Contractor which are not paid in accordance herewith shall bear interest at the rate of 1 1/2  percent per month (18% annually). In the event it should become necessary to employ counsel to collect this obligation, Owner agrees to pay court cost and reasonable attorney's fee for the services of such attorney, whether suit is brought or not.

The Contractor and the Owner, for themselves, their heirs, successors, executors, administrators and assigns, hereby agree to the full performance of the covenants herein contained.

| | |
|---|---|
| Leon Carmichael | Reese & Howell, Inc. |
| Owner | Contractor |
| 12 - 4 - 02 | 13 - 4 - 02 |
| Date | Date |
| By: | By: |
| Its: OWNER | Its: Pres. |

## EXHIBIT A

Attachment "A" -Reese & Howell, Inc.

Project No.: Carmichael Center

| Description | Quantity | Unit | Unit Price | Extensi |
|---|---|---|---|---|
| Mobilization | 1 | L.S. | 6,000.00 | 6,000. |
| Stripping of Topsoil | 0 | C.Y. | 2.50 | 0. |
| Unclassified Excavation (Cut Around Building) | 1,958 | C.Y. | 2.50 | 4,895. |
| Borow Excavation | 7,469 | C.Y. | 5.50 | 41,079. |
| Subgrade Preparation | 21,129 | S.Y. | 1.00 | 21,129. |
| Clay Gravel Base (6"Thick) | 21,129 | S.Y. | 3.25 | 68,669. |
| 15" RCP (Class 3) | 112 | L.F. | 30.00 | 3,360. |
| Engineering Controls | 0 | Hr. | 100.00 | 0. |
| | | | TOTAL | 145,132. |

Contractor's Initials:

Owner's Initials:

Attachment "A" -Reese & Howell, Inc.

Project No.: Carmichael Center

| Description | Quantity | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Mobilization | 1 | L.S. | 6,000.00 | 6,000.00 |
| Stripping Topsoil (6" Thick) | 6,389 | C.Y. | 2.50 | 15,972.50 |
| Stripping Wet Unclassified Excavation | 4,982 | C.Y. | 2.50 | 12,455.00 |
| 12" Undercut Front Parking Lot | 1,133 | C.Y. | 2.50 | 2,832.50 |
| 12" Replacement of Undercut | 1,359 | C.Y. | 5.50 | 7,474.50 |
| Unclassified Excavation   (4325) | 9,273 | C.Y. | 2.50 | 23,182.50 |
| Borrow Excavation (On Site Material) | 12,525 | C.Y. | 3.50 | 43,837.50 |
| Subgrade Preparation | 38,828 | S.Y. | 1.00 | 38,828.00 |
| Clay Base (6") | 38,238 | S.Y. | 3.25 | 124,273.50 |
| Topsoil Respread | 2,064 | C.Y. | 3.75 | 7,740.00 |
| 24" Curb & Gutter | 2,021 | L.F. | 10.00 | 20,210.00 |
| 6" Mountable Curb | 1,678 | L.F. | 5.50 | 9,229.00 |
| 24" Rollback Curb | 63 | L.F. | 11.00 | 693.00 |
| Handicap Ramps | 14 | EA. | 150.00 | 2,100.00 |
| 5' Wide Conc. Sidewalk | 253 | S.Y. | 20.00 | 5,060.00 |
| 6' Wide Conc. Sidewalk | 96 | S.Y. | 20.00 | 1,920.00 |
| 12' Wide Conc. Sidewalk | 198 | S.Y. | 20.00 | 3,960.00 |
| Concrete Paving | 1,698 | S.Y. | 26.40 | 44,827.20 |
| 1" 426A Plant Mix (Wear. Surface) | 35,631 | S.Y. | 1.79 | 63,779.49 |
| 2" 327A Plant Mix (Light Duty) | 29,822 | S.Y. | 3.15 | 93,939.30 |
| 3" 327A Plant Mix (Medium Duty) | 5,809 | S.Y. | 4.72 | 27,418.48 |
| Additional Mobilization (Pavement) | 1 | L.S. | 1,000.00 | 1,000.00 |
| 15" RCP Class 3 | 264 | L.F. | 25.00 | 6,600.00 |
| Slope Paved Headwall | 6 | EA. | 850.00 | 5,100.00 |
| Haybales | 20 | EA. | 7.00 | 140.00 |
| Construcion Layout | 1 | L.S. | 13,400.00 | 13,400.00 |
| Topography | 1 | L.S. | 3,600.00 | 3,600.00 |

|  |  |  | TOTAL | 585,572.47 |

Contractor's Initials:_____

Owner's Initials:_____



FILE

**REESE AND HOWELL, INC.**

March 24, 2003
Carmichael Center, Montgomery Alabama
Additions to the original contract

Change Order #1
Addition to the south parking lot

| Item | Quantity | Unit | Unit Price | Total |
|---|---|---|---|---|
| Stripping Topsoil (6" thick) | 198 | Cy | 2.50 | $495.00 |
| Undercut Parking Lot | 667 | Cy | 2.50 | $1,667.50 |
| Replacement of Undercut | 800 | Cy | 5.50 | $4,400.00 |
| Borrow Excavation ( on site material ) | 11403 | Cy | 3.50 | $39,910.50 |
| Subgrade Preparation | 6157 | Sy | 1.00 | $6,157.00 |
| Clay Base (6") | 6157 | Sy | 3.25 | $20,010.25 |
| Topsoil Respread | 122 | Cy | 3.75 | $457.50 |
| 24" Curb & Gutter | 16 | Lf | 10.00 | $160.00 |
| 6" Mountable Curb | 83 | Lf | 5.50 | $456.50 |
| Concrete Paving | 1430 | Sy | 26.40 | $37,752.00 |
| 1" 426A Plant Mix (wear surface) | 4727 | Sy | 1.79 | $8,461.33 |
| 2" 327A Plant Mix (light duty) | 4251 | Sy | 3.15 | $13,390.65 |
| 3" 327A Plant Mix (medium duty) | 476 | Sy | 4.72 | $2,246.72 |
| 15" rcp class 3 | 8 | Lf | 25.00 | $200.00 |
| Grassing | 2 | Ac | 2000.00 | $4,000.00 |
| Construction Layout | 1 | Ls | 5500.00 | $5,500.00 |
| | | Total Price | | $145,264.95 |
| 6" Pump | 1 | Day | 210.00 | |

Mr. Leon Carmichael                    Title

3 - 25 - 03
Date

Reese & Howell Inc. (Rep)                    Title

3-25-03
Date



## REESE AND HOWELL, INC.

May 19, 2003
Carmichael Center - Montgomery, Alabama
Addititons To The Original Contract

Change Order #3
Addition To The South Parking Lot

| ITEM NO. | Item | Quantity | Unit | Unit Price | Total |
|---|---|---|---|---|---|
| 1 | Stripping (6" Thick) | 3,229 | C.Y. | $2.50 | $8,072.50 |
| 2 | Undercut | 4,397 | C.Y. | $2.50 | $10,992.50 |
| 3 | Inclassified Excavation | 1,049 | C.Y. | $2.50 | $2,622.50 |
| 4 | Borrow Excavation | 6,472 | C.Y. | $3.50 | $22,652.00 |
| 5 | Replace Undercut | 5,276 | C.Y. | $5.50 | $29,018.00 |
| 6 | Demolition | 1 | L.S. | $3,000.00 | $3,000.00 |
| 7 | Subgrade Preparaton | 16,124 | S.Y. | $1.00 | $16,124.00 |
| 8 | Clay Base (6") | 14,820 | S.Y. | $3.25 | $48,165.00 |
| 9 | Clay Base (4") | 4,072 | S.Y. | $3.00 | $12,216.00 |
| 10 | Topsoil Respread | 2,000 | C.Y. | $3.75 | $7,500.00 |
| 11 | 24" Curb & Gutter | 2,159 | L.F | $10.00 | $21,590.00 |
| 12 | 30" Curb & Gutter | 206 | L.F. | $12.00 | $2,472.00 |
| 13 | 6" Mountable Curb | 644 | L.F. | $5.50 | $3,542.00 |
| 14 | Asphalt Paving - Surface | 13,694 | S.Y. | $1.79 | $24,512.26 |
| 15 | Asphalt Paving (2") | 12,172 | S.Y. | $3.15 | $38,341.80 |
| 16 | Asphalt Paving (3") | 1,522 | S.Y. | $4.78 | $7,275.16 |
| 17 | Double Flat Grate | 2 | EA. | $3,000.00 | $6,000.00 |
| 18 | Double Wing Outlet | 3 | EA. | $2,250.00 | $6,750.00 |
| 19 | Single Flat Grate | 3 | EA. | $2,500.00 | $7,500.00 |
| 20 | 15" RCP CL 3 | 320 | L.F. | $25.00 | $8,000.00 |
| 21 | 18" RCP CL 3 | 328 | L.F. | $28.00 | $9,184.00 |
| 22 | 30" RCP CL 3 | 120 | L.F. | $40.00 | $4,800.00 |
| 23 | 36" RCP CL 3 | 144 | L.F. | $50.00 | $7,200.00 |
| 24 | Engineering Controls | 1 | L.S. | $9,545.00 | $9,545.00 |
| | | | | TOTAL | $317,074.72 |

Contractor's Initials: *John E. Howell*

Owner's Initials:

THE SIGNATURES BY THE ABOVE PARTIES UNDERSTAND
THAT THE TOTAL PRICE OF $317,074.72 IS CONTINJUNCY
BASED UPON Verification of QUANTITIES IN THE
APPROXIMATE AMOUNT of $25,000

WITNESS:

# EXHIBIT B



Owner:

    Leon Carmichael

    150 East Fleming Road

    Montgomery, Alabama  36105

## REESE AND HOWELL, INC.

CONTRATOR:

    REESE & HOWELL, INC.

    101 MERIWETHER ROAD

    PIKE ROAD, ALABAMA  36064

ESTIMATE #: 9
EST. DATE: 10/01/03
R&H JOB #: 208
DATE: 10/01/03

Job:   Carmichael Center

| ITEM NO | ITEM DESCRIPTION | CONTRACT QUANTITY | UNIT | UNIT PRICE | QUANITY COMP. THIS ESTIMATE | TOTAL VALUE OF WORK THIS ESTIMATE | QUANITY COMP. TO DATE | TOTAL VALUE OF WORK TO DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | Mobilization | 1 | Ls | $6,000.00 | 0% | $0.00 | 100% | $6,000.00 |
| 2 | Stripping Topsoil (6" thick) | 9789 | Cy | $2.50 | 0.00 | $0.00 | 9789.00 | $24,472.50 |
| 3 | Stripping Wet Unclassified Excavation | 4982 | Cy | $2.50 | 0.00 | $0.00 | 4982.00 | $12,455.00 |
| 4 | 12" Undercut Front Parking Lot | 3005 | Cy | $2.50 | 0.00 | $0.00 | 3005.00 | $7,512.50 |
| 5 | 12" Replacement of Undercut | 3605 | Cy | $5.50 | 0.00 | $0.00 | 3605.00 | $19,827.50 |
| 6 | Unclassified Excavation | 9273 | Cy | $2.50 | 0.00 | $0.00 | 9273.00 | $23,182.50 |
| 7 | Borrow Excavation ( on site material ) | 12525 | Cy | $3.50 | 0.00 | $0.00 | 15525.00 | $54,337.50 |
| 8 | Subgrade Preparation | 38828 | Sy | $1.00 | 0.00 | $0.00 | 38828.00 | $38,828.00 |
| 9 | Clay Base (6") | 38238 | Sy | $3.25 | 0.00 | $0.00 | 38238.00 | $124,273.50 |
| 10 | Topsoil Respread | 2064 | Cy | $3.75 | 0.00 | $0.00 | 2064.00 | $7,740.00 |
| 11 | 24" Curb & Gutter | 2021 | Lf | $10.00 | 31.00 | $310.00 | 2052.00 | $20,520.00 |
| 12 | 6" Mountable Curb | 1678 | Lf | $5.50 | 0.00 | $0.00 | 1723.00 | $9,476.50 |
| 13 | 24" Rollback Curb | 63 | Lf | $11.00 | 0.00 | $0.00 | 63.00 | $693.00 |
| 14 | Handicap Ramps | 14 | Ea | $150.00 | 0.00 | $0.00 | 14.00 | $2,100.00 |
| 15 | 5' Wide Conc. Sidewalk | 253 | Sy | $20.00 | 16.50 | $330.00 | 269.50 | $5,390.00 |
| 16 | 6' Wide Conc. Sidewalk | 96 | Sy | $20.00 | 0.00 | $0.00 | 96.00 | $1,920.00 |
| 17 | 12' Wide Conc. Sidewalk | 198 | Sy | $20.00 | 0.00 | $0.00 | 198.00 | $3,960.00 |
| 18 | Concrete Paving | 1698 | Sy | $26.40 | 0.00 | $0.00 | 1698.00 | $44,827.20 |
| 19 | 1" 426A Plant Mix (wear surface) | 35631 | Sy | $1.79 | 0.00 | $0.00 | 0.00 | $0.00 |
| 20 | 2" 327A Plant Mix (light duty) | 29822 | Sy | $3.15 | 0.00 | $0.00 | 0.00 | $0.00 |
| 21 | 3" 327A Plant Mix (medium duty) | 5809 | Sy | $4.72 | 0.00 | $0.00 | 0.00 | $0.00 |
| 22 | Additional Mobilization (pavement) | 1 | Ls | $1,000.00 | 0% | $0.00 | 0% | $0.00 |
| 23 | 15" rcp class 3 | 264 | Lf | $25.00 | 0.00 | $0.00 | 264.00 | $6,600.00 |
| 24 | Slope Paved Headwall | 6 | Ea | $850.00 | 0.00 | $0.00 | 6.00 | $5,100.00 |
| 25 | Haybales | 20 | Ea | $7.00 | 0.00 | $0.00 | 0.00 | $0.00 |
| 26 | Construction Layout | 1 | Ls | $13,400.00 | 0% | $0.00 | 100% | $13,400.00 |
| 27 | Topography | 1 | Ls | $3,600.00 | 0% | $0.00 | 100% | $3,600.00 |
| 28 | 6" Pump Rental | Each | PD | $210.00 | 0.00 | $0.00 | 23.00 | $4,830.00 |
| 29 | Change Order #1 | 1 | L.S | $145,264.95 | 2.7540% | $4,000.00 | 83% | $121,166.84 |
| 30 | Change Order #3 | 1 | L.S. | $317,074.72 | 7.8166% | $24,784.50 | 63% | $199,739.50 |
| 31 | Change Order #4 | 1 | L.S. | $4,620.00 | 0.00 | $0.00 | 1.00 | $4,620.00 |
| 32 | Extra Work | 1 | L.S. | $6,495.00 | 0.00 | $0.00 | 1.00 | $6,495.00 |

TOTAL VALUE OF WORK COMPLETED TO DATE                          $29,425.09        $773,067.04

    SUB TOTAL                               $29,425.09        $773,067.04

LESS    PREVIOUS ESTIMATES       **EXHIBIT B**          $0.00        $743,641.94

CURRENT AMOUNT DUE THIS PAY ESTIMATE             $29,425.09        $29,425.09



Owner:

Leon Carmichael

150 East Fleming Road

Montgomery, Alabama  36105

**REESE AND HOWELL, INC.**

CONTRATOR:

REESE & HOWELL, INC.

101 MERIWETHER ROAD

PIKE ROAD, ALABAMA  36064

| | |
|---|---|
| ESTIMATE #: | 8 |
| EST. DATE: | 06/26/03 |
| R&H JOB #: | 208 |
| DATE: | 07/28/03 |

Job:    Carmichael Center

| ITEM NO | ITEM DESCRIPTION | CONTRACT QUANTITY | UNIT | UNIT PRICE | QUANITY COMP. THIS ESTIMATE | TOTAL VALUE OF WORK THIS ESTIMATE | QUANITY COMP. TO DATE | TOTAL VALUE OF WORK TO DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | Mobilization | 1 | Ls | $6,000.00 | 0% | $0.00 | 100% | $6,000.00 |
| 2 | Stripping Topsoil (6" thick) | 9789 | Cy | $2.50 | 0 | $0.00 | 9789.00 | $24,472.50 |
| 3 | Stripping Wet Unclassified Excavation | 4982 | Cy | $2.50 | 0 | $0.00 | 4982.00 | $12,455.00 |
| 4 | 12" Undercut Front Parking Lot | 3005 | Cy | $2.50 | 0 | $0.00 | 3005.00 | $7,512.50 |
| 5 | 12" Replacement of Undercut | 3605 | Cy | $5.50 | 0 | $0.00 | 3605.00 | $19,827.50 |
| 6 | Unclassified Excavation | 9273 | Cy | $2.50 | 0 | $0.00 | 9273.00 | $23,182.50 |
| 7 | Borrow Excavation ( on site material ) | 12525 | Cy | $3.50 | 0 | $0.00 | 15525.00 | $54,337.50 |
| 8 | Subgrade Preparation | 38828 | Sy | $1.00 | 0 | $0.00 | 38828.00 | $38,828.00 |
| 9 | Clay Base (6") | 38238 | Sy | $3.25 | 0 | $0.00 | 38238.00 | $124,273.50 |
| 10 | Topsoil Respread | 2064 | Cy | $3.75 | 524 | $1,965.00 | 2064.00 | $7,740.00 |
| 11 | 24" Curb & Gutter | 2021 | Lf | $10.00 | 0 | $0.00 | 2021.00 | $20,210.00 |
| 12 | 6" Mountable Curb | 1678 | Lf | $5.50 | 45 | $247.50 | 1723.00 | $9,476.50 |
| 13 | 24" Rollback Curb | 63 | Lf | $11.00 | 0 | $0.00 | 63.00 | $693.00 |
| 14 | Handicap Ramps | 14 | Ea | $150.00 | 0 | $0.00 | 14.00 | $2,100.00 |
| 15 | 5' Wide Conc. Sidewalk | 253 | Sy | $20.00 | 0 | $0.00 | 253.00 | $5,060.00 |
| 16 | 6' Wide Conc. Sidewalk | 96 | Sy | $20.00 | 0.0 | $0.00 | 96.00 | $1,920.00 |
| 17 | 12' Wide Conc. Sidewalk | 198 | Sy | $20.00 | 0 | $0.00 | 198.00 | $3,960.00 |
| 18 | Concrete Paving | 1698 | Sy | $26.40 | 0 | $0.00 | 1698.00 | $44,827.2 |
| 19 | 1" 426A Plant Mix (wear surface) | 35631 | Sy | $1.79 | 0 | $0.00 | 0.00 | $0.0 |
| 20 | 2" 327A Plant Mix (light duty) | 29822 | Sy | $3.15 | 0 | $0.00 | 0.00 | $0.0 |
| 21 | 3" 327A Plant Mix (medium duty) | 5809 | Sy | $4.72 | 0 | $0.00 | 0.00 | $0.0 |
| 22 | Additional Mobilization (pavement) | 1 | Ls | $1,000.00 | 0% | $0.00 | 0% | $0.0 |
| 23 | 15" rcp class 3 | 264 | Lf | $25.00 | 0 | $0.00 | 264.00 | $6,600.0 |
| 24 | Slope Paved Headwall | 6 | Ea | $850.00 | 0 | $0.00 | 6.00 | $5,100.0 |
| 25 | Haybales | 20 | Ea | $7.00 | 0 | $0.00 | 0.00 | $0.0 |
| 26 | Construction Layout | 1 | Ls | $13,400.00 | 0% | $0.00 | 100% | $13,400. |
| 27 | Topography | 1 | Ls | $3,600.00 | 0% | $0.00 | 100% | $3,600. |
| 28 | 6" Pump Rental | Each | PD | $210.00 | 0 | $0.00 | 23.00 | $4,830. |
| 29 | Change Order #1 | 1 | L.S | $145,264.95 | 0.0000% | $0.00 | 81% | $117,166. |
| 30 | Change Order #3 | 1 | L.S. | $317,074.72 | 12.4831% | $39,580.66 | 55% | $174,955. |
| 31 | Change Order #4 | 1 | L.S. | $4,620.00 | 0.0 | $0.00 | 1.00 | $4,620 |
| 32 | Extra Work | 1 | L.S. | $6,495.00 | 1.0 | $6,495.00 | 1.00 | $6,495 |

| | | |
|---|---|---|
| TOTAL VALUE OF WORK COMPLETED TO DATE | $48,288.16 | $743,641. |
| | | |
| SUB TOTAL | $48,288.16 | $743,641 |
| LESS    PREVIOUS ESTIMATES | $0.00 | $590,699 |
| PLUS    AMOUNT UNPAID PREVIOUS ESTIMATE | $104,654.03 | |
| CURRENT AMOUNT DUE THIS PAY ESTIMATE | $152,942.19 | $152,942 |

# EXHIBIT C

Case 2:03-cr-00259-M...-DRB    Document 796    Filed 09/...006    Page 1 of 1

| U.S. Department of Justice United States Marshals Service | PROCESS RECEIPT AND RETURN See Instructions for "Service of Process by the U.S. Marshal" on the reverse of this form |
|---|---|

| PLAINTIFF UNITED STATES OF AMERICA | COURT CASE NUMBER 2:03cr259-T |
|---|---|
| DEFENDANT LEON CARMICHAEL | TYPE OF PROCESS ORDER - INTERLOCUTORY SALE |

RECEIVED
2005 DEC -2 P 3: 46

| SERVE ▶ AT | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN DEFENDANT PROPERTY KNOWN AS "THE CARMICHAEL CENTER" .ADDRESS (Street or RFD, Apartment No., City, State, and ZIP Code) c/o USMS |
|---|---|

| SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW: | Number of process to be served with this Form - 285 | I |
|---|---|---|
| John T. Harmon United States Attorney's Office Assistant United States Attorney Post Office Box 197 Montgomery, Alabama 36101-0197 | Number of parties to be served in this case | |
| | Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service)

04-DEA-430226

| Signature of Attorney or other Originator requesting service on behalf of : ☒ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER (334) 223-7280 | DATE DECEMBER 2, 2005 |
|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) No. | Total Process No. | District of Origin No. 2 | District to Serve No. 2 | Signature of Authorized USMS Deputy or Clerk | Date 12/8/06 |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served, ☒ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below).

| Name and title of individual served (If not shown above). | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. | |
|---|---|---|
| Address (complete only if different than shown above) | Date of Service 8/28/06 | Time 4:00 pm |
| | Signature of U.S. Marshal or Deputy C.J. Iktson | |

| Service Fee 45.00 | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges 45.00 | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|

REMARKS:  8/28/06  Received proceeds from Interlocutory Sale.

## RETURNED AND FILED

SEP 14 2006

| PRIOR EDITIONS MAY BE USED | | FORM USM 285 (Rev. 12/15/80) |
|---|---|---|

EXHIBIT C

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| State of Alabama<br>Unified Judicial System<br><br>Form ARCivP-93 | COVER SHEET<br>CIRCUIT COURT - CIVIL CASE<br>(Not For Domestic Relations Cases) | Case Number<br>CV-03-2988 |
|---|---|---|
| | | Date of Filing:    Judge Code:<br>[Click Here and Type]  [Type]<br>Month  Day  Year |

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____ MONTGOMERY, ALABAMA
                                                        *(Name of County)*

**REESE & HOWELL, INC.,**          v.          **UNITED STATES OF AMERICA,**
**Plaintiff**                                                      **Defendant**

| **First Plaintiff** | XX Business | Individual | **First Defendant** | Business | Individual |
|---|---|---|---|---|---|
| | Government | Other | | X Government | Other |

NATURE OF SUIT: Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORT PERSONAL INJURY**
G WDEA    -  Wrongful Death
G TONG    -  Negligence: **General**
G TOMV    -  Negligence: Motor Vehicle
G TOWA    -  Wantonness
G TOPL     -  Product Liability/AEMLD
G TOMM   -  Malpractice - Medical
G TOLM    -  Malpractice - Legal
G TOOM   -  Malpractice - Other
G TBFM    -  Fraud/Bad Faith/Misrepresentation
G TOXX    -  Other: _____
**TORTS PROPERTY INJURY**
G TOPE     -  Personal Property
G TORE     -  Real Property
**OTHER CIVIL FILINGS**
G ABAN    -  Abandoned Automobile
G ACCT    -  Account & Nonmortgage
G APAA    -  Administrative Agency Appeal
G ADPA    -  Administrative Procedure Act
G ANPS    -  Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
G MSXX   -  Birth/Death Certificate Modification/Bond forfeiture
                Appeal/ Enforcement of Agency Subpoena/Petition to
                Preserve
G CVRT    -  Civil Rights
G COND   -  Condemnation/Eminent Domain/Right-of-Way
G CTMP    -  Contempt of Court
G CONT    -  Contract/Ejectment/Writ of Seizure
G TOCN    -  Conversion
G EQND   -  Equity Non-Damages Actions/Declaratory
                Judgment/Injunction Election Contest/Quiet Title/Sale
                for Division
G CVUD    -  Eviction Appeal/Unlawful Detainer
G FORJ     -  Foreign Judgment
G FORF     -  Fruits of Crime Forfeiture
G MSHC    -  Habeas Corpus/Extraordinary
                Writ/Mandamus/Prohibition
G PFAB     -  Protection From Abuse
G FELA     -  Railroad/Seaman (FELA)
G RPRO    -  Real Property
G WTEG    -Wills/Trusts/Estates/Guardianships/Conservatorship
G COMP    -  Workers' Compensation
G CVXX    -  Miscellaneous Circuit Civil Case

**ORIGIN** (check one):    INITIAL FILING          APPEAL FROM          OTHER: AMENDED COMPLAINT
                                                                                        DISTRICT COURT    _____
                                    REMANDED T              TRANSFERRED FROM
                                                                     OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?  YES    XX NO  Note:**    Checking "Yes" **does not** constitute a
                                                                                          demand for a jury trial.  (See **Rules 38 and
                                                                                          39**, Ala.R.Civ.P., for procedure)

**RELIEF REQUESTED**        MONETARY AWARD REQUESTED        NO MONETARY AWARD REQUESTED

ATTORNEY CODE: CLA076

**September 27, 2006**

DATE                                    SIGNATURE OF ATTORNEY/PARTY FILING THIS FORM
Paul A. Clark, Attorney for Reese & Howell, Inc., Post OfficeBox 78, Montgomery, Alabama  36101-0078

**MEDIATION REQUESTED:**          YES          XX NO          UNDECIDED

| State of Alabama<br>Unified Judicial System | **SUMMONS**<br>**- CIVIL -** | Case Number |
|---|---|---|
| Form C-34          Rev 6/88 | | CV-03-2988 |

IN THE          CIRCUIT COURT OF  MONTGOMERY COUNTY

**Plaintiff:**          Reese & Howell, Inc.   **v. Defendants:** Leon Carmichael , Sr.; United States of America

NOTICE TO: <u>United States of America</u>
          c/o United States Attorney for the Middle District of Alabama
          One Court Square, Suite 201, Montgomery, Alabama  36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT., A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY **W. Joseph McCorkle, Jr.**
WHOSE ADDRESS IS **Balch & Bingham, LLP, 105 Tallapoosa Street, Suite 200, Montgomery, Alabama 36104**

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN <u>30</u> DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☒   You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐   Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date: _____  _____ By: _____

                                        Clerk/Register

---

☐  CERTIFIED MAIL is hereby requested.          _____

                                        Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:
☐  Return receipt of certified mail received in this office on _____

                                                  (Date)

☐  I certify that I personally delivered a copy of the Summons and Complaint to

_____ in _____ County,

Alabama on _____.

                    (Date)


_____                 _____
              Date                                         Server's Signature


_____                 _____
        Address of Server                               Type of Process Server

---

Court Record - Original      Addressee – Copy